# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Raymond G. Jackson<br><br>        Plaintiff,<br><br>    v.<br><br>Correction[s] Corporation of America, et al.<br><br>        Defendants. | Civil Action No. 06-1241-CKK |

## DEFENDANTS CORRECTIONS CORPORATION OF AMERICA, CCA/CTF AND WALTER FULTON'S MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants Corrections Corporation of America, CCA/CTF and Walter Fulton (collectively "Defendants") through counsel, file this Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b) because:

1.      Plaintiff failed to allege, and cannot allege, that he has properly exhausted all administrative remedies available to him pursuant to 42 U.S.C. § 1997(e); and

2.      Plaintiff has otherwise failed to state a claim upon which relief can be granted; and, lacks standing to bring certain claims in his Amended Complaint.  Alternatively and additionally, Defendants move for summary judgment on the basis that the undisputed facts establish Plaintiff has not properly exhausted all available administrative remedies and that Plaintiffs claims, as a matter of law, are not cognizable Eighth Amendment Claims.  This Motion is supported by the following Statement of Points and Authorities, separate Statement of Uncontroverted Material Facts ("SOF"), and the pleadings on file with the Court.

/ / /

/ / /

/ / /

/ / /

**STATEMENT OF POINTS AND AUTHORITIES**

**I.     FACTUAL BACKGROUND**

Plaintiff filed a Complaint on July 11, 2006 complaining that he was subjected to cruel and unusual punishment in violation of his Eighth Amendment rights while at the D.C. Correctional Treatment Facility. Specifically, Plaintiff raised five claims of conditions of cruel and unusual punishment: (1) For 30 days, beginning on or about January 26, 2006, CCA staff ignored doctors' orders and placed him in a top bunk bed, exacerbating Plaintiff's myasthenia, neurasthenia, Restless Leg Syndrome ("RLS"), and pain Plaintiff experiences as a result of scoliosis; (2) For 12 days, beginning on or about January 26, 2006, contracted medical staff failed to provide Plaintiff with medication for treatment of his stomach ulcer and that he suffered stomach pain for 12 days; (3) for 5 days, beginning on or about March 16, 2006 Plaintiff did not receive medication for the treatment of hypertension; (4) that on or about March 25, 2006, and on two other occasions, contracted medical staff administered the wrong medication to Plaintiff and that Plaintiff experienced different effects from the medication than he was used to and "beg[a]n to feel strange;" and, (5) Defendants lost or stole Plaintiff's property valued at $134.97.[1] Defendants filed their Answer on September 27, 2006 and preserved all affirmative defenses raised in the instant motion.[2]

On January 8, 2007, Plaintiff filed an Amended Complaint which clarified two of his previous claims and added three additional claims. Specifically, plaintiff added that the denial of a bottom bunk bed also exacerbated aggravated "arthritis in his spine and knees" and caused "pain in [his] legs, lower back, knees and hip," and clarified that he suffered abdominal pain for nineteen days, rather than twelve, after medical staff refused to prescribe medication for gastritis

---

[1] *See* Compl. at 1-2.
[2] *See* Answer ¶¶ 1, 7, 10, 15, 16, 18 and 20.

and reflux, not a stomach ulcer, beginning on or about January 19, 2006, not January 26, 2006.[3] Plaintiff also raised for the first time, the following additional claims: (6) for eight days, Defendants ignored doctor's orders to provide Plaintiff with an additional mattress; (7) for twelve days, Defendant Correction[s] Corporation of America kept Plaintiff in a flooded cell due to a broken water pipe; and (8) Defendants kept Plaintiff "in a cell with no air condition[ing] during the hottest time in the summer months."[4] The Court has directed that Defendants answer the Amended Complaint by March 28, 2007. Defendants exercise their option under Fed. R. Civ. P. 12(b) to submit the instant Motion.

Although Plaintiff, proceeding *pro se*, clearly stated that "[t]his is a complaint under 42 U.S.C. 1983" he did not submit his Complaint on the mandatory Court approved forms.[5] Rather, Plaintiff submitted a narrative Complaint. The Court approved forms, however, are designed to aid in the screening of *pro se* inmate Complaints to ensure that all required elements are submitted. To that end, Section III of the form contains a questionnaire relating to the exhaustion of administrative remedies, specifically the institutional grievance procedure. In Plaintiff's narrative Complaint and Amended Complaint, Plaintiff never alleges exhaustion of the Inmate Grievance Procedure. In fact, Plaintiff only alleges "complaining" to Defendants and contracted medical staff relating to four of his seven claims.

With respect to his "bottom bunk" claim, Plaintiff alleges that he "informed staff officers and administrative staff members of that doctor order and was ignored."[6] With respect to his "stomach medication" claims, Plaintiff alleges that "I constantly informed them that I took medication and medical staff never looked into the matter. I complained of stomach pain

---

[3] Am. Compl. at 1-2. *See* Compl. at 2.
[4] Am. Compl. at 2.
[5] Defendants are not moving to dismiss on that procedural basis, but merely raise it as a prefatory observation relating to Plaintiff's failure to exhaust administrative remedies prior to bringing suit.
[6] Am. Compl. at 1.

periodically" and that "I informed medical staff of stomach medication …. Medical staff was aware of this problem."[7] With respect to his "blood pressure medication" claim, Plaintiff alleges that "I alerted pharmacist technician of no more medication."[8] With respect to his "wrong medication" claim, Plaintiff alleges that "In [sic] informed pharmacist technician of her errors."[9,10] However, Plaintiff never alleges that he complained to any other CTF official regarding his property claim, mattress claim, "flooded cell" claim, or "air conditioning" claim. As confirmed by Joyce Allen, the Grievance Coordinator at CTF, Plaintiff did not properly exhaust all administrative remedies through the available grievance and administrative remedy policies and procedures.[11]

Because Plaintiff failed to comply with the CCA/CTF grievance policy he has failed to properly exhaust the administrative remedies available to him under the Prison Litigation Reform Act ("PLRA"). Accordingly, Plaintiff's Complaint must be dismissed.

## II. **PLAINTIFF FAILED TO EXHAUST THE ADMINISTRATIVE REMEDIES AVAILABLE TO HIM AS REQUIRED BY 42 U.S.C. § 1997(E)**

### A. **Plaintiff must properly exhaust all available administrative remedies prior to bringing suit regarding any claim.**

The PLRA requires inmates to properly exhaust all administrative remedies before bringing a lawsuit. Under 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under § 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

---

[7] *See* Compl. at 1, Am. Compl. at 1.
[8] *See* Compl. at 1.
[9] *See* Compl. at 2.
[10] For purposes of the instant motion only, Defendants do not dispute that Plaintiff may have sought informal remedies, by making statements to CTF and contracted medical staff. However, Defendants contend that such communications, in and of themselves, are insufficient to exhaust all available administrative remedies.
[11] SOF ¶¶ 7, 9, and 12-21.

The exhaustion requirement promotes three important interests: "(1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact."[12] Those goals, however, "can only be realized if the prison is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."[13]

As outlined, an inmate is required to exhaust all administrative remedies before filing civil litigation.[14] In addition, a prisoner must exhaust all of his administrative remedies, not just some.[15] In short, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."[16]

### B. Plaintiff Failed to Properly Exhaust His Administrative Remedies provided by Defendants

At the time of filing both his Complaint and Amended Complaint, Plaintiff was a "prisoner confined in any jail, prison, or other correctional facility" for all purposes under 42

---

[12] *Terrell v. Brewer*, 935 F.2d 1015, 1019 (9th Cir. 1991).
[13] *Woodford v. Ngo,* 126 S.Ct. 2378, 2388 (2006).
[14] *Porter v. Nussle,* 534 U.S. 516, 524 (2002), *Barnard v. District of Columbia*, 223 F.Supp.2d 211, 212-13 (D.D.C. 2002) ("[A] prisoner may file a civil action relating to conditions of confinement only after he has exhausted the prison's administrative remedies.") The exhaustion requirement applies to all inmate suits about prison life and "are designed to … create[] an incentive for [inmates] to do what they otherwise would prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims … by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly." *Woodford,* 126 S.Ct. at 2385.
[15] *See, e.g. Harper v. Jenkin,* 179 F.3d 1311, 1312 (11th Cir. 1999) (dismissing § 1983 claim because the inmate did not appeal the denial of the grievance, thus failing to give the state a full chance to hear the grievance); *Wright v. Morris,* 111 F.3d 414, 417 n.3 (6th Cir. 1997) (finding inmate failed to exhaust when the inmate filed a grievance but "did not appeal the denial of that complaint to the highest possible administrative level"); *Saunders v. Goord,* No. 98-cv-8501 (JGK), 2002 WL 1751341, at *3 (S.D.N.Y. 2002) ("Even if the plaintiff did not receive responses directed toward some grievances, the plaintiff was required, at minimum, to make reasonable attempts to appeal those grievances before bringing an action in federal court.")
[16] *Jones v. Bock,* 127 S.Ct. 910, 918-919 (2006).

U.S.C. §1997.[17] Plaintiff was aware of the CTF Inmate Grievance Policy, being provided with summary of process upon his arrival and, in fact, exercised it frequently.[18] These procedures state that in order for an inmate to exhaust his administrative remedies, he must follow the facility grievance procedures and carry the grievance through to its finish.[19] The CTF grievance policy at the time of Plaintiff's incarceration was as follows: after attempting informal resolution of complaints, (1) inmates send written grievances to the facility's Grievance Compliance Officer within seven days of becoming aware of the grievable incident and the Grievance Officer responds to the grievance; (2) if the inmate finds the Grievance Officer's response unsatisfactory, he can appeal to the Warden or the Warden's designee within five days of receipt of the Grievance Officer's decision and will receive a response from the Warden or Warden's designee; (3) if the inmate finds the Warden's or Warden's designee's response unsatisfactory, he can appeal to the Contract Monitor and will receive a response; (4) if the inmate finds the Contract Monitor's response unsatisfactory, he can appeal to the Director of the D.C. Department of Corrections, who will issue a final response.[20]

> **1.    Plaintiff failed to exhaust administrative remedies with regard to his bottom bunk, blood pressure medication, wrong medication, mattress, and flooded cell claims.**

Plaintiffs Complaints raise eight claims. However, Plaintiff is required to exhaust all administrative remedies for each claim prior to bringing suit.[21] Otherwise, the court should dismiss those claims for which Plaintiff failed to exhaust administrative remedies.[22]

---

[17] SOF ¶ 4. *See also,* SOF ¶¶ 1-3.
[18] SOF ¶ 6.
[19] SOF ¶ 7.
[20] SOF ¶¶ 8-9.
[21] *Abdul-Muhammad v. Kempker,* 450 F.3d. 350, 352 (8th Cir. 2006) ("a prisoner who files a complaint in federal court asserting multiple claims against multiple prison officials … must have exhausted each claim against each defendant"), *Ross v. County of Bernalilli,* 365 F.3d 1181, 1188-90 (10th Cir. 2004) (PLRA requires prisoners to exhaust all administrative remedies as to each claim).
[22] *Jones,* 127 S.Ct. at 924 ("if a complaint contains both good and bad claims, the court proceeds

In the instant case, Plaintiff's allegations that he complained to staff members, is an informal attempt at resolution, which should be attempted before an inmate initiates the formal four-step grievance process.[23] While Plaintiff attempted such an informal resolution with respect to his bottom bunk, blood pressure medication and wrong medication claims, he never initiated, much less exhausted, the formal four-step grievance process with respect to these claims.[24] Moreover, with respect to his mattress and flooded cell claims, Plaintiff not only failed to initiate, much less exhaust, the formal four-step grievance process, but Plaintiff does not even allege that he attempted an informal resolution of those claims.[25]

Since Plaintiff failed to submit a formal grievance relating to his bottom bunk, blood pressure medication, wrong medication, mattress, and flooded cell claims, each of which is a grievable matter under the CTF Inmate Grievance Policy, those claims should be dismissed.[26]

### 2. Plaintiff failed to *properly* exhaust his administrative remedies with respect to his property and air conditioning claims.

Plaintiff initiated the formal grievance process with respect to his property claim only after raising it in his Complaint.[27] However, the events related to the property claim, as set forth by Plaintiff in that grievance, allege that his "property" was lost or stolen because he never received a commissary order he placed before being transferred out of CTF on October 21, 2005.[28] Sometime after Plaintiff's return to CTF on January 25, 2006, he began the mandatory pre-grievance process required for claims of lost or stolen inmate property, and submitted a lost/stolen property claim to the CTF Chief of Security.[29] On April 19, 2006, that pre-grievance

---

with the good and …. the bad claims are dismissed")(citation omitted).
[23] SOF ¶ 8.
[24] SOF ¶¶ 12-14.
[25] SOF ¶¶ 15-16. *See* Am. Compl. at 2.
[26] SOF ¶ 11.
[27] SOF ¶ 17 (Grievance was filed on September 8, 2006), Compl. (filed July 11, 2006).
[28] SOF ¶ 17.
[29] *Id.*.

step was concluded when Plaintiff was advised that since he had been transferred before receiving his commissary purchases, the purchase amount was credited back to his inmate trust fund account, and the full balance was transferred to the D.C. Jail.[30,31] It was at this point, that Plaintiff's property claim was ripe for submission as a grievance. Rather than filing, a timely grievance, however, Plaintiff sat on his property claim for three months, included it in his Complaint, waited another two months, and then finally, submitted a grievance.[32] In *Woodford v. Ngo*, the Supreme Court recently clarified that this type of gamesmanship fails to meet the statutory bar required by § 1997(e). Before bringing suit, plaintiffs must exhaust all available administrative remedies and must do so properly by complying "with an agency's deadlines and other critical procedural rules."[33] In fact, Plaintiff's grievance was denied for the very reason that is was untimely.[34]

Plaintiff also submitted, between August 31, 2005 and August 9, 2006, four grievances complaining, in effect, that his housing areas were too hot. Plaintiff's first grievance, on August 31, 2005 was denied as unfounded and was not appealed to the Warden.[35] Plaintiff's second grievance, filed on June 5, 2006, was initially denied, and on appeal, Warden Caulfield directed the maintenance department to re-check Plaintiff's cell for excessive heat.[36] Plaintiff did not proceed with the third or fourth steps of the grievance process, thus failing to exhaust his administrative remedies, despite the fact that Plaintiff's complaints regarding excessive heat in

---

[30] *Id.*
[31] Pursuant to the terms of the contract between the District of Columbia and CCA, no inmates are transferred or released (with the sole exception of direct transfers for emergency medical care at the "locked ward" of Greater Southeast Community Hospital) from CTF to any other facility. Rather, whenever an inmate is to be transferred or released from CTF, the inmate is first transferred to the D.C. Jail, whereupon the inmate is then released or transferred to another institution.
[32] SOF ¶ 17
[33] *Woodford*, 126 S.Ct. at 2386.
[34] SOF ¶ 17.
[35] SOF ¶ 18.
[36] SOF ¶ 19.

other areas of his housing unit were not addressed.[37] Plaintiff's third grievance, filed on July 21, 2006 was denied by the grievance officer, and on appeal Assistant Warden Shelton Richardson authorized Plaintiff to be moved to another cell.[38] Plaintiff did not proceed with the third or fourth steps of the grievance process, thus failing to exhaust his administrative remedies, despite the fact that his complaints regarding excessive heat in other areas of his housing under were not addressed.[39] Plaintiff's fourth grievance, submitted on August 9, 2006 and relating to excessive heat in areas of the housing unit other than his cell was denied by the grievance officer as unfounded as the air conditioning system was functioning properly.[40] In response to Plaintiff's appeal, Warden Caulfield directed the maintenance department to re-inspect the air conditioning system.[41] Plaintiff did not proceed with the third or fourth steps of grievance process after that inspection, and thus failed to exhaust his administrative remedies.[42]

Since Plaintiff failed to properly exhaust all available administrative remedies with respect to his property claim, by failing to submit a timely grievance, and his air conditioning claim, by failing to utilize all appeals, those claims should be dismissed.

    **C.**    **Dismissal with prejudice is appropriate for failure to exhaust administrative remedies.**

Unlike stating a claim upon which relief can be granted, Plaintiff cannot turn back the clock to properly comply with the policies and procedures which govern the proper exhaustion of his administrative remedies. Thus, it would be futile for Plaintiff to refile his Complaint. In such cases, despite the PLRA's requirement that the Complaint be dismissed without prejudice,

---

[37] *Id.*
[38] SOF ¶ 20.
[39] *Id.*
[40] SOF ¶ 21.
[41] *Id.*
[42] *Id.*

dismissal with prejudice is warranted.[43]   Defendants request that Plaintiff's Complaint and Amended Complaint be dismissed with prejudice.

### III. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

It is well settled that complaints are "subject to dismissal for failure to state a claim, if the allegation, taken as true, show the plaintiff is not entitled to relief."[44]  In his Complaint, plaintiff asserts that "[t]his is a case of a eighth [sic] Amendment violation of cruel and unusual punishment and medical negligence."[45]  Likewise, Plaintiff asserts in his Amended Complaint that "[t]his all was medical negligence and Eighth Amendment violation of cruel and unusual punishment."[46]  However, Plaintiff fails to state a Constitutional deprivation of civil rights or medical negligence by Defendants upon which relief can be granted.

#### A.  Plaintiff fails to state a cognizable Constitutional violation by Defendants.
##### 1.  Plaintiff fails to meet the *Farmer* test to plead a Constitutional violation.

Defendants may not "be found liable under the Eighth Amendment for denying an inmate human conditions of confinement unless the official knows of an disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference."[47]  As such, Plaintiff's complaints must allege that the deprivation is objectively serious and that defendants subjectively were deliberately indifferent to Plaintiff's plight.[48]  Plaintiff does not make those allegations in either his Complaint or Amended Complaint.

---

[43] *Shane v. Fauver,* 213 F.3d 113, 117 (3d Cir. 2000).
[44] *Jones*, 127 S.Ct. at 920.
[45] *See* Compl. at 2.
[46] *See* Am. Compl. at 2.
[47] *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).
[48] *Anderson-Bey v. District of Columbia,* 466 F.Supp.2d 51, 61 (D.D.C. 2006).

Plaintiff must first show a substantial harm resulting from his resulting from his claims.[49] Plaintiff fails to allege any harm or threatened injury relating to his property, mattress, flooded cell, or air conditioning claims. With respect to his stomach medication, blood pressure medication, and wrong medication claims, Plaintiff only alleges that he "suffered stomach pain" and that "[t]hese mistakes could have been serious to my health."[50] However, stomach pain, and a nebulous claim of possible harm do not rise to the level of substantial harm required by the objective prong of the *Farmer* test, and, if it does, the limited duration of the conduct complained of fails to meet the subjective, deliberate indifference prong.[51]

Additionally, Plaintiff fails to allege deliberate indifference by any defendant with respect to his blood pressure medication, wrong medication, property, mattress, flooded cell and air conditioning claims. "To state a claim under the Eighth Amendment, Plaintiff must, at minimum, allege facts sufficient to establish that Defendants possessed a total unconcern from his welfare in the fact of serious risks."[52] Plaintiff never attempts to make any such allegation relating to any claim in either his Complaint or Amended Complaint. Moreover, as to those claims where Plaintiff did not complain to prison officials or exhaust administrative remedies, Defendants could not have been expected to perceive a significant risk. Where Plaintiff did

---

[49] *Valley Forge Christian College v. Americans United for Separate of Church and State, Inc.,* 454 U.S. 464, 472 (1982) (A plaintiff must prove "actual or threatened injury" to ensure that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."). *See also, Lewis v. Casey,* 518 U.S. 343, 349-350 (1996) (Inmates must show actual harm in order to have standing to sue.)
[50] *See* Compl. at 1-2.
[51] *See Estelle v. Gamble,* 429 U.S. 97 (1976) (no Eighth Amendment claim stated where prison officials, *inter alia,* inadvertently failed to fill prisoner's prescription for blood pressure medication for four days); *Glover v. Ridley,* 1994 WL 35849 at *5, 93-cv-492 (SSH) (D.D.C. 1994) (failure to provide the drug AZT on one occasion "clearly fail[s] to meet the deliberate indifference standard); *Cox v. District of Columbia,* 834 F.Supp. 439 (D.D.C. 1992) (two-week delay in providing medication to prisoner insufficient to state Eighth Amendment claim); *Bryan v. Administrative of F.C.I. Otisville,* 879 F.Supp. 134 (S.D.N.Y. 1995) (objective prong not met where prisoner was deprived of medicine for three days, causing fever and mouth infection); *Shapely v. Nevada,* 766 F.2d 404, 407 (9th Cir. 1985) (*per curiam*) (a "delay in medical treatment must have caused substantial harm" to constitute Eighth Amendment violation); *Wilson v. Seiter,* 501 U.S. 294, 303 (1991) ("the medical care a prisoner receives is just as much a condition of his confinement as … the temperature he is subjected to in his cell").
[52] *Pryor-El v. Kelley,* 892 F.Supp. 261, 268 (D.D.C. 1995).

utilize the available administrative remedies, by bringing his complaints of excessive heat in his cell to the attention of prison officials, it is undisputed that Plaintiff was moved to another, cooler cell.[53] Likewise, Plaintiff admits that: (1) after 30 days, he was placed in a bottom bunk; (2) on February 6, 2006, he received his stomach medication after investigation by medical personnel; (3) he received his blood pressure medication on March 21, 2006.[54] For those claims where prison officials actually knew of a substantial risk and responded reasonably to that risk, the officials may "be found free from liability …. Even if the harm ultimately was not averted."[55] Where the risks were timely addressed, there is no deliberate indifference to Plaintiff's Eight Amendment rights, in fact, there was no indifference at all, and those claims must be dismissed.[56]

### 2. Plaintiff fails to plead that Defendants violated any of his Constitutional rights.

Although CTF Program Manager Walter Fulton is the only named defendant, his name appears only in the caption of Plaintiff's original Complaint. Plaintiff never pleads in either his Complaint or Amended Complaint that Defendant Fulton was involved, or even was aware of, any of his eight claims. Plaintiff's failure to include any such statement in his narrative Complaint and Amended Complaint creates a pleading defect with respect to Defendant Fulton, and for that reason alone, all claims should be dismissed with respect to Defendant Fulton.

While a mere statement to the effect that "Defendant John Doe did such and such" would be sufficient to overcome the instant motion with respect to individually named defendants, such a claim limited, in this case, to "CCA staff," "medical staff," "pharmacist technician," "staff officers and [a]dministrative staff members," and "staff members" is not sufficient to state a § 1983 with respect to corporate defendants Corrections Corporation of America and CCA/CTF. "When a private corporation is acting under contract with the District of Columbia government

---

[53] SOF ¶ 20.
[54] *See* Compl. and Am. Compl.
[55] *Farmer,* 511 U.S. at 844.
[56] *Gabriel v. Corrections Corp, of America,* 211 F.Supp.2d 132, 139 (D.D.C. 2002) ("dismissal is proper where a plaintiff alleges no facts that indicate that a defendant's failure to provide treatment was deliberate.")

to operate a correction institution, Section 1983 liability depends on the plaintiff's ability to allege that his injury is a result of the "custom or policy" of the private corporation."[57] In the instant case, where Plaintiff raised no allegation of "the existence of any policy or custom that could have arguably violated his rights, dismissal is proper."[58]

      **B.**    **Plaintiff's claims should not be combined to create a "totality of conditions of confinement" claim.**

Although this court has allowed individual claims, which in and of themselves have not been pleaded with facts sufficient to establish deliberate indifference, to go forward with evidence of other deprivations of right, such leeway is inappropriate in this case.[59] In *Anderson-Bey,* the complained of conditions of confinement during an inter-state transfer of inmates had a "mutually enforcing effect that produces the deprivation of a single, identifiable human need."[60] In this case, however, Plaintiff's claims are disparate, not mutually reinforcing. At a minimum, there is no rational nexus between Plaintiff's air conditioning, flooded cell, and property claims, with his need to be free from physical pain, and those claims should be dismissed.

      **C.**    **Plaintiff fails to state a common-law tort of medical negligence against Defendants.**

In order to state a medical negligence claim, Plaintiff is required to allege that Defendants "owed a duty of medical care to [Plaintiff], that the care provided fell short of the prevailing standard at the time of the events, and that the substandard care was the proximate cause of the injury."[61] Plaintiff does not, and cannot, allege that Defendants Corrections Corporation of America, CCA/CTF, and Walter Fulton owe him a duty of medical care. During all relevant

---

[57] *Brown v. District of Columbia,* 2005 WL 3276267, *3, No. Civ. A. 04-2195 (RMU) (D.D.C. August 2, 2005) (citing *Gabriel,* 211 F.Supp.2d at 138).
[58] *Gabriel,* 211 F.Supp.2d at 139.
[59] *See Anderson-Bey v. District of Columbia,* 466 F.Supp.2d 51, 63 (D.D.C. 2006).
[60] *Wilson,* 501 U.S. 304.
[61] *Scott v. District of Columbia,* 2006 WL 1409770, *3, No. 05-1853 (RWR), (D.D.C. May 23, 2006) (citing *Eibl v. Kogan*, 494 A.2d 640, 642 (D.C. 1985)); *see also, Kelton v. District of Columbia,* 413 A.2d. 919, 922 (D.C. 1980) (Labeling a claim "medical negligence" does not amount to a cause of action when the "complaint specifies no negligent act and fails to characterize the duty whose breach might have resulted in negligence liability.), *Pannu v. Jacobson,* 909 A.2d 178, 202 (D.C. 2006)(J. Kramer, dissent) ("A lawsuit such as this for medical negligence is a clam against a doctor or other healthcare provider.)

times, Corrections Corporation of America, the operator of CTF, and its employees, including Program Manager Walter Fulton, have had no contractual liability or responsibility for providing medical care to any inmate.[62]  As Plaintiff cannot establish that Defendants owed him a duty of medical care and failed to plead that the care he received fell below the prevailing standard of care and further failed to plead that the substandard care was the proximate cause of an actual injury, Plaintiff failed to state a claim for medical negligence upon which relief can be granted and those claims against Defendants should be dismissed.

## IV. CONCLUSION

Because: (1) Plaintiff failed to provide the Court with any evidence he complied with the PLRA exhaustion requirements; (2) Defendants affirmatively demonstrate that Plaintiff failed to properly exhaust the available administrative remedies; (3) Plaintiff failed to plead that his the action complained of with respect to his Constitutional claims was subjectively serious or that Defendants acted with deliberate indifference, and (4) Defendants affirmatively demonstrate that they owe no duty of medical care to Plaintiff, which is a prerequisite to state a common-law claim for medical negligence, Defendants Corrections Corporation of America, CCA/CTF, and Walter Fulton respectfully request their Motion to Dismiss Plaintiff Amended Complaint or, in the Alternative, for Summary Judgment be granted.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[62] SOF ¶ 5.

Dated: March 28, 2007

        s/Timothy J. Bojanowski
Daniel P. Struck, (D.C. Bar No. CO0037)
Timothy J. Bojanowski, (D.C. Bar No. OH0014)
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
Telephone: (602) 263-7324
Facsimile: (602) 263-7387

Mariana Bravo, (D.C. Bar No. 473809)
Colleen Durbin , (D.C. Bar No. 473809)
CARR MALONEY, PC
1615 L Street, NW, Suite 500
Washington, DC 20036
Telephone: (202) 315-5500
Facsimile: (202) 310-5555

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of March 2007, a true an accurate copy of the foregoing Defendants Corrections Corporation of America, CCA/CTF, and Walter Fulton's Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment, was sent via first-class mail, postage-prepaid, to:

Raymond G. Jackson (Reg. No. 27973-016)
2850 Langston Place, SE
Washington, DC 20020
*Plaintiff Pro Se*

    s/Dianne Clark

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Raymond G. Jackson<br><br>                Plaintiff,<br><br>    v.<br><br>Correction[s] Corporation of America, et al.<br><br>                Defendants. | Civil Action No. 06-1241-CKK |

**ORDER**

Upon Motion of Corrections Corporation of America, CCA/CTF and Walter Fulton to Dismiss Plaintiff's Amended Complaint or, in the Alternative, for Summary Judgment and for good cause shown therein, it is this _____ day of _____, 2007:

**ORDERED,** that Defendants' Motion be and the same hereby is granted, and it if further;

**ORDERED,** that all claims against Defendants Corrections Corporation of America, CCA/CTF and Walter Fulton hereby are **dismissed with prejudice.**

                                                              Judge Colleen Kollar-Kotelly

cc:      Raymond G. Jackson (Reg. No. 27973-016)
          2850 Langston Place, SE
          Washington, DC 20020

          Daniel P. Struck, Esq.
          Timothy J. Bojanowski, Esq.
          **JONES, SKELTON & HOCHULI, P.L.C**.
          2901 North Central Avenue, Suite 800
          Phoenix, Arizona 85012

          Mariana Bravo, Esq.
          Colleen Durbin, Esq.
          **CARR MALONEY, PC**
          1615 L Street, NW, Suite 500
          Washington, DC 20036

1756592.1