# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Raymond G. Jackson

                Plaintiff,

     v.

Correction[s] Corporation of America, et al.

                Defendants.

Civil Action No. 06-1241-CKK

### AFFIDAVIT OF JOYCE ALLEN

I, JOYCE ALLEN, being duly sworn according to law, upon my oath, depose and say:

      1.     I have been employed by Corrections Corporation of American (hereinafter "CCA") since October 2000. I currently am the Facility Grievance Officer at the Correctional Treatment Facility ("CTF") operated by Corrections Corporation of America in Washington, D.C.

      2.     I have reviewed the allegations contained in Plaintiff's Complaint and his Amended Complaint.

      3.     I have personal knowledge that the matters in this Affidavit are true and accurate, and submit this Affidavit in support of Defendants Correction[s] Corporation of America, CCA/CTF, and Walter Fulton's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, for Summary Judgment.

      4.     As Facility Grievance Officer, I am familiar with the CCA grievance policies and procedures regarding the available administrative remedies for inmates and detainees. My responsibilities include overall coordination of the grievance procedure at

1736801.1

CTF, assigning a number to each grievance, coordinating the investigation of grievances relating to CCA, completing the Grievance Officer's Report utilizing Form 14-5A, and maintaining all grievance records and documents, including the permanent grievance log.

5.    With respect to grievances relating to medical and culinary services, which are provided by third parties under contract to the D.C. Department of Corrections other than CCA, I receive the grievances, assign numbers to them, list them in the appropriate medical or culinary grievance log and forward them to the appropriate party for resolution.

6.    The inmate grievance procedure contained in CCA Policy 14-5 (attached hereto as Attachment A) was in effect at the time of Raymond Jackson's incarceration at CTF.

7.    Upon an inmate's arrival to the facility, CCA/CTF provides an Inmate Handbook, which contains a summary of the facility grievance policies and procedures. Additionally, inmates have access to the complete grievance policy at the CTF Law Library or through facility staff.

8.    In order for an inmate or detainee to exhaust his administrative remedies, he should follow the facility grievance procedures and carry the grievance through to its finish. Prior to pursuing the formal grievance process, inmates and detainees should first avail themselves to the Informal Resolution Process by submitting an Inmate Request Slip or speaking with any staff member concerning the issue prior to submitting a grievance. If the complainant is dissatisfied with that the result, only then may the formal process be initiated.  At CTF, the formal grievance process contains four steps:

1736801.1

a.    Inmates must initially send grievances, on the CCA Inmate/Resident Grievance Form (Form 14-5A), to the Grievance Officer within seven (7) days of the alleged incident. (Step One). The time for filing begins from the date the problem or incident became known to the inmate/resident.

b.    If the inmate finds the response unsatisfactory, he may appeal to the Warden within five (5) days of receipt of the Facility Grievance Officer's decision by completing the Request for Warden/Administrator Review portion of the Grievance Form.. (Step Two).

c.    If the inmate is unsatisfied with the Warden's response, he may appeal to the District of Columbia Department of Corrections' Contract Monitor within five (5) days of receipt of the Warden's response.(Step Three).

d.    The inmate may then appeal the Contract Monitor's determination directly to the Director of the District of Columbia Department of Corrections within five (5) days of receipt of the Contract Monitor's decision (Step Four).

9.    If an inmate fails to follow this procedure or omits any part of it, he has not exhausted the administrative remedies available. If an inmate or detainee fails to cooperate with the investigation process, he has failed to carry the grievance through to its finish and thus has failed to exhaust the administrative remedies available.

10.    Additionally, the Grievance Policy includes procedures for inmates/residents to file Emergency Grievances. Grievances may be considered Emergency Grievances if the subject matter of the grievance is such that compliance with the regular time guidelines would subject the grievant to risk of personal injury. If the grievant asks that the grievance be considered an emergency and details the basis for needing an immediate

- 3 -

1736801.1

response, the Facility Grievance Officer, will, within 24 hours review the grievance to determine if an emergency exists. If an emergency exists, the Facility Grievance Officer will take initial action to resolve the grievance within twenty-four (24) hours of receipt. After initial action has been taken and within seventy-two (72) hours of receipt of the emergency grievance, the Facility Grievance Officer will prepare and issue a written decision to the Grievant.

11.    I have reviewed the grievance log for calendar years 2005 and 2006 and identified a total of five grievances which address the issues raised in Plaintiff's Complaint and Amended Complaint.

12.    On August 31, 2005, Inmate Jackson submitted Grievance 05-3222 complaining that on August 30, 2005 C.O. Rogers refused to let him keep his cell door open and that there was no ventilation in his cell. Inmate Jackson did not request any action to remedy his grievance. The grievance was denied on September 14, 2005 as being "without merit" as an investigation of the grievance showed that C.O. Rogers was not on duty on August 30, 2005. Furthermore, Inmate Jackson was advised that only the shift Captain or Unit Manager could approve a deviation from policy permitting an inmate to keep his cell door open. Inmate Jackson acknowledged the Grievance Officer's decision on September 14, 2005 and did not appeal the denial. A true copy of Grievance 05-3222 is Attachment B hereto.

13.    On June 5, 2006, Inmate Jackson submitted Grievance 06-1168 complaining that the vent in his cell barely blows air, that he is not permitted to paper over the window in his cell, and that there is no air in the small TV room and no air in the bathrooms of his housing unit. Inmate Jackson requested to be permitted to put paper over

- 4 -

1736801.1

his window to block the sun's rays until the Maintenance Department can take action. The grievance was denied on June 16, 2006, with the explanation that the security protocols do not permit inmates to cover or otherwise block the windows in their cells. Inmate Jackson acknowledged receipt of this decision on June 23, 2006 and appealed the decision to Warden Caulfield. Warden Caulfield responded that he has instructed the Maintenance Department to inspect the cell for excessive heat on June 30, 2006. Inmate Jackson accepted the Warden's resolution on July 3, 2006. I do not have any record of Plaintiff appealing this decision either to the Contract Monitor or the Director of the D.C. Department of Corrections. A true copy of Grievance 06-1168 is Attachment C hereto.

14.    On July 21, 2006, Inmate Jackson submitted Grievance 06-1456 complaining again that the vent in his cell "is barely blowing air" and that his cell "receives to[o] much sunlight" and requested that Maintenance Department tint the window and inspect the ventilation system. The grievance was denied on July 24, 2006 on the basis that the requested relief of tinting windows could not be provided but that the vent will be checked and that the facility will inquire whether or not Inmate Jackson may be moved to another cell. Inmate Jackson acknowledged this resolution on August 2, 2004 and appealed to the Warden. Assistant Warden Richardson responded that due to the problem, Inmate Jackson would be moved to another cell on August 4, 2006. Inmate Jackson accepted the Assistant Warden's resolution on August 7, 2006. I do not have any record of Plaintiff appealing this decision either to the Contract Monitor or the Director of the D.C. Department of Corrections. A true copy of Grievance 06-1456 is Attachment D hereto.

15.    On August 9, 2006, Inmate Jackson submitted Grievance 06-1635 complaining that "[t]here is no air in the small TV Room and no air in designated game

- 5 -

1736801.1

room" or in the bathroom. The grievance was denied on August 15, 2006 as an investigation by the Maintenance Department revealed that all of the air conditioning in the housing unit was on and working. Inmate Jackson acknowledged the Grievance Officer's decision on August 16, 2006 and appealed to the Warden. On August 21, 2006, Warden Caulfield directed the Maintenance Department to perform another inspection of the housing unit. Inmate Jackson accepted the Warden's resolution on August 22, 2006. I do not have any record of Plaintiff appealing this decision either to the Contract Monitor or the Director of the D.C. Department of Corrections. A true copy of Grievance 06-1635 is Attachment E hereto.

16.    On September 8, 2006 Inmate Jackson submitted grievance 06-1804 complaining that he did not receive $134.97 worth of lost commissary items he ordered on October 20, 2005 during his movement to another facility on October 25, 2005. An investigation revealed that the $134.97 was transferred to Inmate Jackson's account at the D.C. Jail on November 10, 2005. Moreover, Inmate Jackson, returned to CTF on January 25, 2006 and submitted a lost property claim. Lost property claims are considered under a Policy 14-6 which states that lost property claims are to be handled by the Chief of Security, and that if an inmate is dissatisfied with that process, only then may they use the grievance system to file a grievance regarding the resolution of their lost property claim. Inmate Jackson received a response to his lost property claim on April 19, 2006. Under the Grievance Policy, Inmate Jackson was allowed seven days, until April 26, 2006 to file a grievance regarding his property claim. As Inmate Jackson waited until September 8, 2006, almost five months, to submit his property grievance, it was untimely submitted and thus denied. A true copy of Grievance 06-1804 is Attachment F hereto.

1736801.1

17.    Inmate Jackson claims in his Complaint that beginning on March 16, 2006, medical staff failed to provide his blood pressure medication for five days. Based on my review of the Medical Grievance Log for March 2006, Inmate Jackson submitted Medical Grievance 06-149 on Wednesday, March 29, 2006, complaining that he was not receiving medication, twelve days after the alleged incident. Although his grievance was not timely submitted under the Inmate Grievance Policy, the grievance was forwarded to Gloria Robinson, the D.C. Department of Corrections' Medical Grievance Coordinator, on March 30, 2006 for resolution. The grievance log indicates that Inmate Jackson received a response to his grievance on April 6, 2006 and did not appeal Ms. Robinson's decision.

18.    Inmate Jackson claims in his Complaint that on March 25, 2006, medical staff administered the wrong medication. Based on my receive of the Medical Grievance Log for March and April 2006, Inmate Jackson submitted Medical Grievance 06-162 on Monday, April 3, 2006, complaining that he was not receiving proper medication and dosage, nine days after the alleged incident. Although his grievance was not timely submitted under the Inmate Grievance Policy, the grievance was forwarded to Gloria Robinson, the D.C. Department of Corrections' Medical Grievance Coordinator on April 7, 2006 for resolution. The grievance log indicates that Inmate Jackson received a response to his grievance on April 13, 2006 and did not appeal Ms. Robinson's decision.

19.    There is no record that Inmate Jackson did, at any time, submit any grievance regarding his allegations in the Complaint that CCA staff members ignored doctor's orders and improperly kept him assigned to a top bunk for 30 days, beginning on or about January 26, 2006. Likewise, there is no record that Inmate Jackson did, at any time, submit any grievances regarding his allegations in the Amended Complaint that CCA staff

members ignored doctor's orders and improperly kept him assigned to a top bunk for 30 days; that CCA staff members delayed providing of an additional mattress for eight days; or, that he was kept in a flooded cell for 12 days due to a broken water pipe.

20.    I hereby attest that Inmate Jackson failed to properly exhaust the administrative remedies available to him for the allegations contained in his Complaint or Amended Complaint.

FURTHER AFFIANT SAYETH NAUGHT.

_Joyce Allen_
Joyce Allen

WASHINGTON                    )
                              ) ss.
DISTRICT OF COLUMBIA          )

SUBSCRIBED AND SWORN before me this 28th day of March , 2007, by Joyce Allen.

_Phoenix C. Ishmon_
Notary Public

PHOENIX C. ISHMON
My Commission Expires NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires July 31, 2011

1736801.1

**Attachment A**

| | |
|---|---|
| CHAPTER 14: | INMATE/RESIDENT RIGHTS |
| SUBJECT: | INMATE/RESIDENT GRIEVANCE PROCEDURES |
| SUPERSEDES: | JULY 15, 2000 |
| EFFECTIVE DATE: | DECEMBER 1, 2002 |
| FACILITY: | CORRECTIONAL TREATMENT FACILITY |
| FACILITY SUPERSEDES: | AUGUST 14, 2001 |
| FACILITY EFFECTIVE DATE: | MARCH 6, 2003 |

APPROVED:    **SIGNATURE ON FILE AT CORPORATE OFFICE**
             **JIMMY TURNER**
             **VICE PRESIDENT, OPERATIONS**

APPROVED:    **SIGNATURE ON FILE AT CORPORATE OFFICE**
             **G. A. PURYEAR**
             **EXECUTIVE VICE PRESIDENT/ GENERAL COUNSEL**

## 14-5.1  PURPOSE:

To establish procedures for inmates/residents to formally file complaints about facility conditions, treatment, policies, and procedures. To provide that such complaints are reviewed in a fair and expeditious manner and resolved in the best interest of both the inmate/resident and the facility.

## 14-5.2  AUTHORITY:

Corporate and Facility Policy and Contract.

## 14-5.3  DEFINITIONS:

A.   Emergency Grievance - A grievance, the resolution of which, if subject to the normal time limits, would subject the grievant to a substantial risk of personal injury or irreparable harm.

B.   Facility Grievance Officer – Facility staff member responsible for tracking, coordinating grievance investigations and answering grievances.

C.   Grievance - A written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate/resident by staff or other inmates, or any condition or incident within the department or institution which personally affects the inmate/resident.

D.   Grievant - The inmate/resident who filed the formal complaint

E.   Informal Resolution - An attempt to address concerns through discussion with appropriate staff.

F.   Inmate/Resident - Any adult or juvenile, male or female housed in a CCA facility. Inmates/residents may also be referred to as detainees, prisoners or offenders depending on classification and in accordance with facility management contracts.

G.   Reasonable Suspicion - A suspicion which is based upon documentable, articulable facts which, together with the employee's knowledge and experience, lead him/her to believe that an unauthorized situation or violation of rules exists.

H.   Reprisal - Any action or threat of action against anyone for the good faith use of or good faith participation in the grievance procedure.

**Proprietary Information - Not for Distribution - Copyrighted**
**Property of Correction Corporation of America**

**14-5.4  POLICY:**

Whenever possible, inmate/resident complaints and grievances should be resolved on an informal basis without the filing of a formal grievance. Many matters can and should be resolved directly and promptly between the inmate/resident and institutional staff without the necessity of filing a formal grievance. It is extremely important that institutional counseling staff take an active role in resolving as many complaints as possible prior to the filing of a grievance.

However, all inmates/residents will have access to formal grievance procedures any time the informal process has not provided successful resolution of the complaint.

Inmates/residents shall not be subject to retaliation, reprisal, harassment, or discipline for use or participation in the grievance procedure. Any allegations of this nature will be thoroughly investigated by the Warden/Administrator and reviewed by the appropriate Senior Divisional Director. The Senior Divisional Director will notify the Vice President, Operations of any allegations that are found to be credible.

**14-5.5  PROCEDURES:**

A.    INFORMAL RESOLUTIONS

All facilities will have an informal resolution process in place. Inmates/residents are required to utilize the informal resolution process concerning questions, disputes or complaints prior to the submission of a formal grievance. If an inmate/resident does not receive resolution in the informal process, he/she may file a grievance and must document on the grievance that informal resolution was attempted.

**AT THIS FACILITY, THE INFORMAL RESOLUTION PROCESS IS AS FOLLOWS:**

**The Inmate will fill out an Inmate Request Slip or speak with any Staff member concerning an issue that they may have, prior to submitting a grievance.**

B.    GRIEVABLE MATTERS

The following matters are grievable through this grievance procedure by inmates/residents:

1.    Application of policies, rules, and procedures towards inmates/residents over which CCA has control;

2.    Individual staff and inmate/resident actions, including any denial of access of the grievance procedure;

3.    Reprisals against inmates/residents for utilizing the Inmate/Resident Grievance Procedures;

4.    The loss of property legitimately possessed by an inmate/resident only after the procedures outlined in CCA Corporate and Facility Policy 14-6 have been completed; and

5.    Any other matter relating to the conditions of care and supervision within the authority of CCA, except as noted below.

C.    NON-GRIEVABLE MATTERS

The following matters are not grievable by inmates/residents through these grievance procedures:

1.    State and Federal court decisions;

2.    State and Federal laws and regulations;

3.    Final decisions on grievances;

**Proprietary Information - Not for Distribution - Copyrighted**
**Property of Correction Corporation of America**

4.  Contracting agency (BOP, INS, state department of corrections, etc.) policies, procedures, decisions or matters (i.e., institutional transfers, parole and probation decisions, etc.); or

5.  Disciplinary hearings or appeals (Disciplinary actions must follow the procedure outlined in CCA Corporate and Facility Policy 15-2).

D.  GRIEVANCE AVAILABLE REGARDLESS OF CLASSIFICATION

Any inmate/resident confined to a CCA managed facility can invoke the grievance procedure regardless of disciplinary, classification, or other administrative decision to which the inmate/resident may be subject.

E.  NO GRIEVANCES TO BE SUBMITTED ON BEHALF OF ANOTHER

An inmate/resident may not submit a grievance on behalf of another inmate/resident; however, assistance from a staff member or inmate/resident may be provided when necessary to communicate the problem on the grievance form.

F.  MULTIPLE GRIEVANCES

1.  Inmates/residents will be limited to two (2) pending non-emergency grievances at any given time.

**At this facility additional procedures are as follows:**

**Non emergency grievances addressing different concerns may be submitted by an inmate with no limitation. If more than two (2) grievances are submitted addressing the same concern then only one of those grievances will be answered.**

2.  If an inmate/resident files a grievance when he/she has two(2) other active grievances pending, it will be logged and held by the Facility Grievance Officer until one of the previously submitted grievances has been completed.

3.  Grievances will be handled in the order they are received.

4.  The time guidelines below do not apply to those grievances held in suspended status.

5.  A grievance which is alleged by an inmate/resident to be an emergency will be reviewed by the Facility Grievance Officer. If the Facility Grievance Officer determines that the grievance is not an emergency, it will be treated as an ordinary grievance and will count against this limit of two (2) pending grievances.

G.  TIME GUIDELINES

1.  The total time for the grievance process will be no more than ninety (90) days from filing to a final appeal decision, unless unusual circumstances are present.

   a.  The inmate/resident must file the grievance within seven (7) days of the alleged incident.

       The time for filing begins from the date the problem or incident became known to the inmate/resident.

   b.  The Facility Grievance Officer will, within fifteen (15) days of receipt of an inmate/resident grievance, conduct an investigation of the grievance and render a decision.

   c.  The inmate/resident is to submit any appeal to the Warden/Administrator or designee within five (5) days of receiving the decision from the Grievance Officer.

   d.  The Warden/Administrator will render a written decision on the grievance appeal within fifteen (15) days of receipt from the inmate/resident.

Proprietary Information - Not for Distribution - Copyrighted
Property of Correction Corporation of America

    e.       **AT THIS FACILITY, ADDITIONAL PROCEDURES ARE:**

          **Grievances for Sexual Misconduct will follow the procedures contained in policy 14-100.**

2.    Upon notice to the grievant, the time limitations may be extended to allow for a more complete investigation of the claims. Justification for the extension must be provided to the grievant on Form 14-6B, Grievance Extension Notice.

3.    At all stages of the grievance process, upon receipt of the grievance, the grievance will be date stamped.

H.    EMERGENCY GRIEVANCE PROCEDURE

1.    If the subject matter of the grievance is such that compliance with the regular time guidelines would subject the grievant to risk of personal injury, the grievant may ask that the grievance be considered an emergency and detail the basis for a need of immediate response.

2.    If the Facility Grievance Officer, after reviewing the basis for the grievance being designated an emergency, determines that an emergency does exist, action shall be taken to resolve the grievance within twenty-four (24) hours of receipt of the grievance.

3.    After the initial action, and within seventy-two (72) hours of receipt of the grievance, the Facility Grievance Officer will prepare and give a written decision to the grievant.

4.    If the grievant appeals the decision, the Warden/Administrator or designee will respond with a written decision within five (5) days.

I.    FILING THE GRIEVANCE

1.    In filing a grievance, the inmate/resident must complete the Inmate/Resident Grievance Form (Form 14-5A) and place it in the Grievance Mail Box, or, if a Grievance Mail Box is not used, forward it to the Facility Grievance Officer.

The Facility Grievance Officer will check the Grievance Mail Boxes daily, <u>except for weekends and holidays</u>. If a mailbox is not used, grievances are to be forwarded daily to the Facility Grievance Officer.

**AT THIS FACILITY, THE PROCEDURE FOR FORWARDING THE GRIEVANCE TO THE GRIEVANCE OFFICER IS AS FOLLOWS:**

**1.  Emergency grievances and grievances filed by inmates in segregation may be given to any staff member in the grade of Assistant Shift Supervisor or above. The receiving staff will provide a receipt for the grievance.**

**2.  The inmate grievance form is a three part form, the last page of the form is the inmates copy to verify that the inmate submitted a grievance.**

2.    Grievances are considered special correspondence. If a sealed envelope is labeled "Grievance" and addressed to the Facility Grievance Officer, it will not be opened for inspection unless there is reasonable suspicion to believe the sealed envelope contains contraband. If reasonable suspicion exists and the Warden/Administrator or designee's approval is obtained, the envelope may be opened and inspected only for contraband.

3.    If a grievance is submitted for review and the grievant is released from custody, efforts to resolve the grievance will normally continue. It is the grievant's responsibility to notify the Facility Grievance Officer of the pending release and to provide a forwarding address and any other pertinent information.

**Proprietary Information - Not for Distribution - Copyrighted**
**Property of Correction Corporation of America**

<u>**4.**</u>    **AT THIS FACILITY, PROCEDURES FOR FILING A GRIEVANCE AGAINST THE CONTRACTING AGENCY ARE AS FOLLOWS:**

<u>**NONE**</u>

J.    FACILITY GRIEVANCE OFFICER

The Warden/Administrator is to designate an individual or individuals as Facility Grievance Officer(s) whose responsibilities will include the following:

1.    overall coordination of the grievance procedure,

2.    see that informal resolution has been attempted,

3.    assign a number to the grievance and maintain a permanent grievance log,

4.    coordinate the timely investigation of grievances,

5.    prepare written decisions on grievance matters utilizing Form 14-5A

6.    ensure that when a grievance decision specifies that an action is to be taken, that a date is included for completing the action,

7.    provide a copy of the completed Form 14-5A to the grievant and have him/her sign it upon receipt,

8.    follow-up that all remedies/ required actions are fulfilled by the imposed deadline, and

9.    maintain all grievance records and documents as outlined in 14-5.5.M.

K.    GRIEVANCE REMEDIES

The grievance procedure is to afford the grievant a meaningful remedy.  Remedies shall cover a broad range of reasonable and effective resolutions. Remedies include the following:

1.    Replacement - Restoration of property by substituting a similar or like item.  This will normally be ordered before monetary reimbursement is given. Replacement as a grievance remedy will only occur after the procedures of CCA Corporate and Facility Policy 14-6 have been followed.

2.    Reimbursement - Money will be given for items lost or destroyed.  The value to be reimbursed will be determined by the Warden/Administrator. Reimbursement as a grievance remedy will only occur after the procedures of CCA Corporate and Facility Policy 14-6 have been followed.

3.    Change of procedures or practices appropriately related to the complaint or conditions;

4.    Correction of records; or

5.    Other remedies, as appropriate

L.    APPEAL

1.    If a grievant is not satisfied with the decision of the Facility Grievance Officer, the grievant may appeal to the Warden/Administrator or designee by completing the Request for Warden/Administrator Review portion of the grievance form and submitting this form to the Warden/Administrator. The Warden/Administrator or designee's decision is final unless otherwise specified in the facility management contract.

**AT THIS FACILITY, ADDITIONAL APPEAL PROCEDURES ARE AS FOLLOWS:**

<u>**i.**</u>    <u>**If the inmate is not satisfied with the Warden's response, the inmate may appeal to the Contract Monitor within five (5) days of receipt of the Warden's decision.**</u>

**Proprietary Information - Not for Distribution - Copyrighted**
**Property of Correction Corporation of America**

    ii.    **If the inmate is not satisfied with the Contract Monitor's response, the inmate may appeal to the Director DC Department of Corrections within five (5) days of receipt of the Contract Monitor's decision.**

    iii.    **All appeals must have the original grievance and response attached when filed.**

    iv.    **The Grievance Officer will log all appeals and forward the appeal, along with any supporting documentation, to the appropriate level of appeal office in accordance with Department Order 4030.1D.**

2. The Warden/Administrator or designee will review the issue of the grievance and the decision to determine if the grievance has been appropriately addressed. The Warden/Administrator can obtain and review any information necessary to render a decision as to the appeal.

3. A copy of the completed grievance form will be returned to the Facility Grievance Officer who will forward a copy to the inmate/resident.

4. Barring extraordinary circumstances, a grievance will be considered settled if the decision at any step is not appealed by the inmate/resident within the given time limit.

5. Grievances which are prematurely appealed to the Warden/Administrator or designee will be returned without review.

M. RECORDS

1. Records regarding the filing and disposition of grievances shall be collected and maintained systematically by the Facility Grievance Officer through either hard copy or computerized form. The record shall include a log showing the following:

    a.    grievance number;

    b.    date of receipt;

    c.    name of grievant;

    d.    subject of grievance;

    e.    disposition date;

    f.    brief description of the disposition; and

    g.    appeal results, if any.

This log will be forwarded to the Corporate Quality Assurance Department on a monthly basis.

2. Record Retention. Records will be retained according to CCA Corporate and Facility Policy 1-15.

3. Record Location. No copies of grievances shall be placed in an inmate/resident's file.

4. Confidentiality. Records regarding the participation of an individual in the grievance procedures will not be available to employees or inmates/residents, except for clerical processing of records by CCA. Employees participating in the disposition of a grievance shall have access to records essential to the resolution of the grievance.

N. DISTRIBUTION AND TRAINING

A copy of this Policy and Procedure will be available to each staff member currently employed and for each inmate/resident currently housed at the facility. All new staff will receive a presentation on this Policy and Procedure during pre-service training. New inmates/residents will be informed of the grievance procedure upon entry to the facility and a copy will be

**Proprietary Information - Not for Distribution - Copyrighted
Property of Correction Corporation of America**

available in the inmate/resident handbook or library. If there is difficulty in understanding the procedure, every effort shall be made to explain the policy and procedure on an individual basis.

O.      **AT THIS FACILITY, ADDITIONAL PROCEDURES ARE AS FOLLOWS:**

A copy of the Grievance Log will be provided to the Contract Monitor on a monthly basis.

## 14-5.6  REVIEW:

The General Counsel and the Vice President, Operations will review this policy on an annual basis.

## 14-5.7  APPLICABILITY:

All CCA facilities except those facilities that are required to follow the Contracting Agency's grievance policy

## 14-5.8  ATTACHMENTS:

1.      Form 14-5A - Inmate/Resident Grievance Form

2.      Form 14-6B – Grievance Extension Notice

3.      Other Forms for this facility are as follows:

**NONE**

## 14-5.9  REFERENCES:

ACA Standards.  The ACA Standards for this facility are:

**3-4271**

**Proprietary Information - Not for Distribution - Copyrighted**
**Property of Correction Corporation of America**

Grievance No.:_____                                    **Form 14-5A – For Offical Use Only**

## CCA INMATE/RESIDENT GRIEVANCE FORM

Name (Print): _____
                    Last Name                           First                        Middle Initial

Number: _____ Housing Assignment: _____

INFORMAL RESOLUTION ATTEMPTED?      Yes _____        No _____

NAME OF STAFF CONTACTED _____

**STATE GRIEVANCE (include documentation, witnesses, date of incident and any other information pertaining to the grievance subject. Attach additional pages if necessary)**

_____

_____

_____

_____

_____

_____

_____

**Requested Action**

_____

_____

Inmate/Resident's Signature: _____ Date Submitted: _____

**GRIEVANCE OFFICER'S REPORT**

_____

_____

_____

_____

**GRIEVANCE OFFICER'S DECISION**

_____

_____

_____

Grievance Officer's Signature: _____ Date:_____

Inmate/Resident's Signature (upon receipt): _____ Date: _____

APPEAL:  Yes _____    No _____        STATE REASON (S) FOR APPEAL: _____

_____

_____

_____

**WARDEN/ADMINISTRATOR'S RESPONSE**

_____

_____

_____

Warden/Administrator's Signature: _____ Date: _____

Inmate/Resident's Signature (upon receipt) _____ Date: _____

Revised 02/01/02

Form 14-5B

## GRIEVANCE EXTENSION NOTICE

INMATE'S NAME:_____

INMATE'S NUMBER:_____ HOUSING ASSIGNMENT:_____

DATE:_____ GRIEVANCE NUMBER#_____

This is to inform you that your grievance will not be answered by the seven (7) day deadline. More time is necessary to complete the investigation of your complaint.

Justification:_____

_____

_____

The Warden/Administrator has granted a _____day extension which means that your grievance will be answered and returned to you by _____.

Facility Grievance Officer's Signature:_____ Date:_____

Inmate's Signature:_____ Date:_____

Revised 02/01/02