UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAYMOND G. JACKSON,

    Plaintiff,

        v.                                                                Civil Action No.  06-1241 (CKK)

CORRECTIONS CORPORATION OF
AMERICA, et al.,

    Defendants.

MEMORANDUM OPINION

Plaintiff, a former inmate proceeding *pro se*, brings this action, filed July 11, 2006, pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights under the Eighth Amendment were violated while he was incarcerated at the District of Columbia Correctional Treatment Facility ("CTF").[1]  His amended complaint names as Defendants the Corrections Corporation of America ("CCA") and the Center for Correctional Health Policy and Studies ("CCHPS").  Before the Court is CCA's motion to dismiss or, in the alternative, for summary judgment.[2]  Because Plaintiff has not stated a sufficient Eighth Amendment claim against CCA, the motion will be granted.

I. FACTUAL BACKGROUND

Plaintiff was incarcerated at CTF from March 24, 2005 to October 21, 2005, and from January 25, 2006 to September 19, 2006.  Deft.'s Statement of Material Facts ¶ 1; Decl. of

---

[1] The Court appointed counsel for Plaintiff for the limited purpose of mediation.

[2] Defendant CCHPS has been served, but has yet to file an answer.

Timothy J. Bojanowski ¶ 3.[3]  The CTF is operated by CCA under a contract with the District of Columbia.  Decl. of Timothy J. Bojanowski ¶ 5.  Under the agreement, CCA administers inmate grievances related to medical services at the facility, but is not responsible or liable for claims related to the provision of medical services.  *Id.* Att. B.  However, CCA is liable for any act or failure to act that inhibits the District of Columbia's ability to provide proper medical service.  *Id.*

Plaintiff alleges that when he arrived at the CTF he was made to sleep in the top bunk of his cell despite a doctor's order that he sleep on the bottom bunk because of pain associated with restless leg syndrome, nerve abnormalities in his legs, and arthritis of his spine and knees.  Am. Compl. at 1.  As a result of spending thirty days on the top bunk, Plaintiff suffered pain in his legs, lower back, knees and hips.  *Id.*

Plaintiff claims that the jail staff did not timely provide him with needed medication for abdominal pain.  *Id.*  His neurologist ordered that Plaintiff be provided an additional mattress, but he was denied one for eight days.  *Id.* at 2.  Plaintiff contends that the CTF staff's conduct was medical negligence and a violation of the Eighth Amendment.  *Id.*

Plaintiff also raises claims separate from the alleged medical mistreatment.  He asserts that while he was incarcerated a water pipe broke and he was kept in a flooded cell for twelve days.  *Id.*  In addition, Plaintiff alleges that he was forced to live in a cell without air-conditioning during the summer months.  *Id.*  He seeks monetary damages of $42,000.00 and punitive damages.  *Id.*

---

[3] Plaintiff was released from the custody of the Federal Bureau of Prisons on April 19, 2007 and currently resides in the District of Columbia.

II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant CCA moves to dismiss because Plaintiff has failed to state a claim upon which relief can be granted. The Court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) only if it appears, assuming the alleged facts to be true and drawing all inferences in Plaintiff's favor, that Plaintiff cannot establish "any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions ... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 127 S.Ct. at 1964-65 (citations and internal quotation marks omitted). Thus, the Court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276.

In resolving a motion to dismiss for failure to state a claim, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A *pro se* pleading is to be liberally construed by the Court. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (citation omitted). Accordingly, *pro se* plaintiffs are not required to use specific legal terms or phrases, and the Court "will grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal*, 16 F.3d at 1276.

Defendants also move, in the alternative, for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

Defendant CCA moves to dismiss the amended complaint on the ground that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). In relevant part, the PLRA provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement of Section 1997e(a) is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). Section 1997e(a) "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," and, where possible, to "satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524-25. A prisoner must complete the administrative process "regardless of the relief offered through

administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted administrative remedies.  *Jackson v. Dist. of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).   The PLRA requires "proper exhaustion," i.e. "using all steps that the agency holds out, and doing so properly."  *Woodford v. Ngo*, 126 S.Ct. 2378, 2385 (2006).

The PLRA's exhaustion requirement is not a jurisdictional bar, but simply governs the timing of the action.  *Ali v. Dist. of Columbia*, 278 F.3d 1, 5-6 (D.C. Cir. 2002).  The failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to plead or demonstrate exhaustion in their complaints.  *Jones v. Bock*, 127 S.Ct. 910, 921 (2007).  However, if the allegations by a plaintiff, taken as true, show that relief is barred for failure to exhaust, the case is subject to dismissal for failure to state a claim.  *Id.* at 920.

CCA's inmate grievance procedure has four steps.  An inmate must first file a grievance form with the Grievance Officer within seven days of the alleged incident.  Aff. of Joyce Allen ¶ 8a.[4]  If the inmate is not satisfied with the Grievance Officer's response, he may appeal to the Warden within five days of receipt of the Grievance Officer's decisions.  *Id.* ¶ 8b.  The third step of the grievance procedure requires an appeal to the  Department of Corrections' ("DOC") Contract Monitor within five days of receipt of the Warden's response.  *Id.* ¶ 8c.  The inmate may then appeal to the Director of the DOC within five days of the Contract Monitor's decision.  *Id.* ¶ 8d.

The fact that Plaintiff has been released from custody since the filing of this action does

---

[4] In evaluating whether a plaintiff has exhausted administrative remedies, a court may consider matters outside the pleadings.  *See Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

not excuse him from the exhaustion requirement.  *See Cox v. Mayer*, 332 F.3d 422, 425 (6th Cir. 2003); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002); *Dixon v. Page*, 291 F.3d 485, 488-89 (7th Cir. 2002); *Harris v. Garner*, 216 F.3d 970, 973-74 (11th Cir. 2000) (en banc); *see also Hunter v. Corr. Corp. of America*, 441 F. Supp. 2d 78, 82 (D.D.C. 2006) (applying exhaustion requirement to former inmate).[5]  Plaintiff was required to complete "proper exhaustion" of the available remedies while he was incarcerated.  The time frame for exhaustion of remedies expired while he was in jail.  *See* Aff. of Joyce Allen ¶¶ 8, 12-15, 17-19.  A claim that pursuing a remedy will be futile is not a valid reason for failing to complete the administrative process.  *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000); *Bitton v. Gonzales*, No. 05-2045, 2006 WL 335766, at *1 (D.D.C. Feb. 13, 2006); *Jeanes v. United States Dep't of Justice*, 231 F. Supp. 2d 48, 50 (D.D.C. 2002); *see also Booth*, 532 U.S. at 741 n. 6 (Court will not "read futility or other exceptions into [PLRA's] exhaustion requirements where Congress has provided otherwise").

The amended complaint claims the following: (1) Plaintiff filed a grievance regarding his reassignment to a bottom bunk in a cell and the facility did not honor his request for 30 days; (2) medical staff was informed of Plaintiff's need for stomach medication, but did not prescribe the medication for 19 days; (3) a neurologist ordered that Plaintiff be provided an additional mattress, but one was not provided for eight days; (4) Plaintiff was kept in a flooded cell caused by a broken water pipe for twelve day before he was transferred to a dry cell; and (5) air conditioning was not

---

[5] The Court of Appeals for the District of Columbia Circuit has not decided the issue.  *See Bethea v. United States Parole Comm'n*, 56 Fed. Appx. 514, 515 (D.C. Cir. 2003) (court "need not decide whether in light of [prisoner's] release from custody, PLRA's exhaustion requirement still applies.").

provided in his cell during the summer months of his incarceration. Am. Compl. at 1-2. Defendant has submitted an affidavit and exhibits detailing Plaintiff's grievance history. Plaintiff has also attached grievance exhibits to his opposition to Defendant's motion.

CCA has no record that Plaintiff filed a grievance alleging that CTF staff members failed to timely provide a second mattress, as ordered by a neurologist. *Id.* ¶ 19. In addition, CCA has no record that Plaintiff filed a grievance complaining that a broken pipe had caused the flooding of his cell, or that he was kept in a flooded cell for twelve days. *Id.* Those two claims, therefore, have not been exhausted.

Plaintiff filed a number of grievances regarding the ventilation problems in his cell. On August 31, 2005, Plaintiff submitted a grievance complaining that his cell had inadequate ventilation and that a member of the prison staff, C.O. Rogers, would not permit him to keep his cell door open. *Id.* ¶ 12 & Att. B. Plaintiff's grievance was denied because C.O. Rogers was not on duty on the date of the alleged incident. *Id.* Additionally, Plaintiff was advised that only the shift Captain or his Unit Manager could authorize a deviation from policy permitting him to keep his cell door open. *Id.* Plaintiff did not submit an appeal within five days as required by the Inmate Grievance Policy. *Id.*

On June 5, 2006, Plaintiff claimed that the ventilation in his cell was poor, that he was not permitted to paper over the window in his cell, and that there was no air in the small TV room and the bathrooms of his housing unit. *Id.* ¶ 13 & Att. C. Plaintiff requested that he be permitted to put paper of his window to block the sunlight. *Id.* The CCA-CTF Facilities Supervisor investigated the grievance and discussed her findings with Plaintiff, at which point Plaintiff reiterated his request to place paper over his window. *Id.* Att. C. The grievance was denied by

the Facility Grievance Officer on the ground that security protocols do not permit inmates to cover or otherwise block the windows in their cells.  *Id.* ¶ 13 & Att. C.  Plaintiff appealed to the Warden, and on June 30, 2006, the Warden advised Plaintiff that the Maintenance Department would check his cell for excessive heat.  *Id.*  Plaintiff did not appeal his grievance to either the Contract Monitor or DOC's Director.  *Id.*

On July 21, 2006, Plaintiff submitted another grievance complaining that the vent in his cell "is barely blowing air" and that his cell "receives to[o] much sunlight." *Id.*  ¶ 14 & Att. D.  Plaintiff requested that his cell windows be tinted to reduce the amount of sunlight entering the cell and that the Maintenance Department inspect the ventilation system.  *Id.*  The grievance was denied again because security considerations prevented any cell windows from being tinted.  *Id.*  After Plaintiff appealed the denial of this grievance, on August 4, 2006, Plaintiff was moved to another cell.  *Id.*  Plaintiff did not appeal his grievance to either the Contract Monitor or the DOC's Director.  *Id.*

On August 9, 2006, Plaintiff submitted a grievance complaining that  there was "no air in the small TV Room and no air in [the] designated game room" or bathroom.  *Id.* ¶ 15 & Att. E. An investigation by the Facilities Supervisor concluded that all of the air conditioning was fully functional.  *Id.*  Thus, Plaintiff's grievance was denied as unfounded.  *Id.*  Plaintiff appealed and the Warden directed the Maintenance Department to perform another inspection of the housing unit.  *Id.*  Plaintiff did not appeal his decision to either the Contract Monitor or the Director of the DOC.  *Id.*

On August 21, 2006, Plaintiff complained that the dust particles in his cell caused by the ventilation system was causing him congestion.  Pl.'s Opp., Att. at 23.  He requested that he be

allowed to wear a dust mask.  *Id.*  The Grievance Officer stated that inmates were not allowed to wear dust masks.  *Id.*  Plaintiff appealed this decision.  *Id.*  Plaintiff submitted a subsequent grievance alleging that he had requested to be seen by a doctor for a dust mask and to see a neurologist, that he had pain in his knees and his medication had expired.  *Id.* at 22.  The Grievance Officer found that the issues had been addressed.  *Id.*  Plaintiff appealed, claiming that the Warden had approved his use of a dust mask, and seeking compensation of $150.00 for each day he is without the mask.  *Id.*  On appeal, the Medical Director stated that Plaintiff's request for a dust mask had been addressed in a previous grievance and that Plaintiff had been seen numerous times by doctors in the previous month.  *Id.* at 21.

On February 20, 2006, Plaintiff submitted a request that he be moved to a single cell bottom bunk.  Pl.'s Opp., Att. at 2.  The jail granted plaintiff's request.  *Id.*  The next day Plaintiff submitted a grievance claiming that he had not been moved to a bottom bunk for 27 days.  *Id.* at 3.  In response, the Grievance Officer stated, "You have not only been provided with a bottom bunk but you have now been placed in a single cell."  *Id.*  Plaintiff appealed this decision requesting that the facility change its rules regarding bunk placement because he might have been injured due to the delay.  *Id.*  On March 9, 2006, the Warden denied the appeal, informing plaintiff that he could not dictate the administration of the facility.  *Id.*

Plaintiff also filed grievances claiming that the facility's medical staff failed to provide him with his stomach medication.  On January 19, 2006, Plaintiff alleged that he had not received his medications for blood pressure, stomach problems and prostate.  *Id.* at 11.  The Grievance Officer's response noted that Plaintiff had received his requested treatment on February 17, 2006.  *Id.*  Plaintiff appealed, claiming that he still had not received his medication.  *Id.*  On March 30,

2006, CTF's health services responded that plaintiff did not inform staff of his ulcer problems upon his arrival at the facility, but that within seven days, he had been evaluated, tests were done and medication prescribed. *Id.* at 6.

On July 27, 2006, Plaintiff filed a grievance regarding his stomach pain. *Id.* at 5. In response, the Medical Director stated that Plaintiff was receiving Zantac and other medications, had been referred to a specialist, and that tests had been performed. He also noted that Plaintiff did not appear for scheduled appointments or cooperate with the doctors. *Id.* at 5.

On August 31, 2006, Plaintiff submitted a grievance alleging that he had not been given stomach medication for 19 days after CTF staff became aware of the problem. *Id.* at 8. As a result, he suffered abdominal pain. *Id.* He requested an apology from the medical staff and monetary compensation for his pain and suffering. *Id.* The Grievance Officer stated that the matter had been addressed in the facility's response to four prior grievances. *Id.* Plaintiff appealed, requesting $500 per day compensation for the time period he was without medication. *Id.* On September 27, 2006, the Medical Director responded that Plaintiff's complaint had already been resolved and that he had most recently refilled the prescription on September 13, 2007. *Id.* at 7.

Based on the exhibits and affidavits submitted by the parties, the record demonstrates that Plaintiff has not exhausted his claims regarding his flooded cell and his request for a second mattress. The three remaining claims – involving his bunk placement, the ventilation in his cell, and his stomach medication – were addressed by CTF staff. Plaintiff did not complete the administrative process for these claims.

Defendant argues that Plaintiff was required to exhaust administrative remedies for all of

his claims, including those that were resolved in Plaintiff's favor. The PLRA does not require a prisoner to complete the entire administrative process if he has received the relief requested and where money damages were not available. *Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005) (exhaustion requirement does not mean prisoner must appeal grievances resolved as requested), *cert. denied*, 126 S.Ct. 2862 (2006); *Abney v. McGinnis*, 380 F.3d 663, 668-69 (2d Cir. 2004) (prisoner need not appeal favorable grievance ruling); *Almond v. Tarver*, 468 F.Supp.2d 886, 897 (E.D. Texas 2006) (where grievance resolved in prisoner's favor further exhaustion unnecessary). The "benefits of exhaustion ... include allowing a prison to address complaints ... before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 127 S.Ct. at 923. Since the prison facility was able to address Plaintiff's grievances regarding his cell bunk assignment, medical treatment, and air ventilation in his cell, and Plaintiff received a resolution short of monetary damages, the exhaustion requirement has been satisfied.[6]

If an inmate fails to exhaust one of more discrete claims, the PLRA requires only that the unexhausted claims be dismissed, not the complaint in the entirety. *Jones*, 127 S.Ct. at 924. The PLRA does not contain a total exhaustion requirement. *Id.* Consequently, the following claims will not be dismissed for failure to exhaust: (1) medical staff did not provide Plaintiff his stomach medication for 19 days; (2) the facility did not transfer Plaintiff to a bottom bunk for 30 days; and (3) Plaintiff's cell was without proper ventilation during the summer months.

---

[6] Defendant does not claim that the CCA's Grievance Procedure provides monetary relief. The Inmate Grievance Procedure states that the following remedies are available to prisoners in CCA facilities: (1) replacement or restoration of property; (2) reimbursement for items lost or destroyed; (3) a change in the facility's practices or procedures; (4) correction of records; and (5) other remedies as appropriate. Aff. of Joyce Allen, Att. A at 5.

B. Eighth Amendment Claim

Even if Plaintiff had exhausted all of his claims, his complaint is still subject to dismissal under Fed. R. Civ. P. 12(b)(6). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted). When evaluating claims for cruel and unusual punishment, courts make a two-part inquiry: (1) whether the defendants acted with a sufficiently culpable state of mind, and (2) whether, in light of "contemporary standards of decency," the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A claim of deliberate indifference under the Eighth Amendment must allege that the defendant subjectively was aware of the excessive risk to Plaintiff's health or safety posed by his action or inaction. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.*

The amended complaint asserts that Plaintiff informed CTF staff of his medical condition, his need to be placed on a bottom bunk, and his prescription for stomach medication. He also alleges that his health was compromised by the poor ventilation in his cell. In response to Plaintiff's grievances, CTF staff allegedly either delayed action or failed to act.

For purposes of this motion, the Court finds that the amended complaint alleges a serious medical need. However, Plaintiff's own submissions, attached to his response to Defendant's motion, reflect that personnel at the jail took action on his grievances by eventually providing medication, transferring him to a cooler cell, and assigning him to a bottom bunk in his cell.

These actions undercut Plaintiff's assertion that CCA employees acted or failed to act with deliberate indifference to Plaintiff's medical needs. *See Brooks v. Dist. of Columbia*, No. 05-362, 2006 WL 3361521, at *9 (D.D.C. Nov. 20, 2006) (defendant not deliberately indifferent where affirmative steps taken to remedy grievance); *Steele v. Dist. of Columbia Housing Auth.*, No. 02-1420, 2006 WL 335770, at *14 (D.D.C. Feb. 14, 2006) (same).

Even if Plaintiff has stated an Eighth Amendment claim, his amended complaint fails to allege sufficient facts to support a finding of liability by CCA. A municipality cannot be held liable for monetary, declaratory or injunctive relief under 42 U.S.C. § 1983 unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). Nor is a municipality liable under § 1983 on a *respondeat superior* theory simply because of the action or inaction of persons in its employ. *Id.* at 691.

Because CCA is operating a correctional facility that the District of Columbia ordinarily would operate, CCA is treated as if it were a municipality. *See Brown v. Dist. of Columbia*, No. 04-2195, 2005 WL 3276267, at *3 (D.D.C. Aug. 2, 2005) (concluding that private corporation operating prison under contract with District of Columbia government is "state actor" for purposes of § 1983); *Gabriel v. Corr. Corp. of America*, 211 F.Supp.2d 132, 138 (D.D.C. 2002) (same). CCA cannot be held liable for monetary, declaratory or injunctive relief under 42 U.S.C. § 1983 unless the constitutional violations of which Plaintiff complains are the result of a CCA policy or custom. *Monell*, 436 U.S. at 690; *Gabriel*, 211 F.Supp.2d at 138. Plaintiff's amended complaint is deficient for its failure to allege that the deprivation of his constitutional rights was caused by a CCA policy or custom. *See Carter v. Dist. of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986)

(plaintiff must show a course deliberately pursued establishing affirmative link between policy and alleged constitutional violation). Nothing in the complaint articulates such a policy or custom or its connection to the injuries Plaintiff allegedly suffered. He has failed to state a valid Eight Amendment claim against CCA.

### IV. CONCLUSION

Based on the foregoing, the motion to dismiss or, in the alternative, for summary judgment filed by the Corrections Corporation of America will be granted. A separate order accompanies this Memorandum Opinion.

                                                      /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge

Date: June 27, 2007