IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAYMOND G. JACKSON,<br><br>     Plaintiff,<br>v.<br><br>CORRECTIONS CORPORATION OF<br>AMERICA, et al.,<br><br>     Defendants. | Civil Action No. 06-1241 (CKK) |

PLAINTIFF'S POST-HEARING MEMORANDUM REGARDING
DEFAULT JUDGMENT DAMAGES

**I. Introduction**

The Court requested briefing identifying where in the record Plaintiff Raymond Jackson ("Mr. Jackson") provided evidence in support of his medical negligence and Eighth Amendment claims against Defendant Center for Correctional Health Policy and Studies, Inc. ("CCHPS"). In this memorandum, Mr. Jackson does so.

Mr. Jackson respectfully suggests, however, that the inquiry itself is erroneous. CCHPS has defaulted. As a matter of law, therefore, CCHPS is deemed to have committed the misconduct alleged in the Complaint. CCHPS committed medical negligence in its treatment of Mr. Jackson and violated Mr. Jackson's Eighth Amendment rights, *as a matter of law*. CCHPS's misconduct was, *as a matter of law*, the

proximate cause of Mr. Jackson's injuries.  A causal relationship is an element of negligence under D.C. law.  Causation is therefore included, *as a matter of law*, in the default entered against CCHPS.  The only issue properly before the Court is the amount of damages that should be awarded against CCHPS, and on that point the record is uncontroverted, because CCHPS, after being properly served, chose never to grace the Court with an appearance.

## II.    Procedural Background

The Complaint in this Action was filed on July 11, 2006 against Correctional Corporation of America, the District of Columbia Correctional Treatment Facility, and Mr. Walter Fulton seeking $42,334.97 in damages.  (Doc. # 1).  At the time of the initial filing, Raymond Jackson ("Mr. Jackson") was in prison and filed his complaint *pro se*. While still in prison and proceeding *pro se*, Mr. Jackson filed an Amended Complaint in this Action on January 8, 2007, adding the Center for Correctional Health Policy and Studies, Inc. ("CCHPS" or "Defendant") as a defendant.  (Doc. # 22).  The Amended Complaint sought $42,100 in monetary damages for enumerated conduct, including medical negligence, and alleged violations of the Eighth Amendment.  *Id.*

The Court entered an order on March 14, 2007, requiring CCHPS to file an answer to the Amended Complaint by April 4, 2007.  (Doc. # 28).  The Court entered a second order on March 16, 2007 requiring that CCHPS, "after service of the summons

and amended complaint, file an answer or otherwise plead by April 4, 2007." (Doc. # 30). The U.S. Marshals Service acknowledged receipt of the service of process for CCHPS at address 1015 15th St. NW, Ste. 1000, Washington, DC 20005 on March 26, 2007. Melanie Henderson, Fulfillment Specialist for defendant CCHPS, acknowledged service of process of the Amended Complaint on April 2, 2007. (Doc. # 37). No Answer or other defense was filed by Defendant CCHPS. The Court entered another order on June 29, 2007, requiring CCHPS to show cause within ten days why a default judgment should not be entered against it for failure to provide an answer to the Amended Complaint by April 23, 2007. (Doc. # 47). No Answer or other defense was filed by Defendant CCHPS.

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of the Court entered a default against CCHPS on September 10, 2007. (Doc. #53). At a status conference following entry of the default, the Court requested a damages hearing, which was scheduled for January 4, 2008. On January 4, 2008, Mr. Jackson appeared for an evidentiary hearing regarding the damages sought in connection with the default against CCHPS.

During the January 4, 2008 Evidentiary Hearing for Default Judgment Damages, the Court declared its intention to limit Mr. Jackson's damages to only injuries related to the failure of CCHPS to provide Mr. Jackson with certain stomach medications, (Tr. 40:11-12), and possibly to even deny those limited damages based on issues of causation

(Tr. 41:22–42:1). The Court stated that Mr. Jackson's damages could be so limited because of: (1) the specificity with which Mr. Jackson pled his injuries in his *pro se* prisoner's Complaint (the "Amended Complaint"); (2) potential issues with causation (Tr. 4:3-5, 40:22-23, 41:23-42:1); and (3) a concern that "there's nobody here on the other side. So, if they decided not to pursue this then you're going to have to follow what he set out here [in the Amended Complaint]" (Tr. 15:19-23).

For the reasons set forth more fully below, the Court's proposed limit to damages and the request for proof of causation are impermissible under District of Columbia law. Mr. Jackson should be awarded the full damages sought in his Complaint, and any other damages the Court deems appropriate.

## II.  Mr. Jackson Is Entitled to the Full Damages Sought in his Amended Complaint.

### A.  Causation Is Irrelevant to Default Judgment Damages.

First, issues of causation, which the Court examined during the damages hearing and ordered Mr. Jackson to brief herein, are irrelevant given the posture of this case. Defendant CCHPS made no appearance in this case, and the Court ordered entry of a default. August 22, 2007 Order at 1. As explained by this district court in *Flynn v. Mastro Masonry Contrs.*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002), the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." The default "establishes the defendant's liability." *Id.* (citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17

(D.D.C. 2001)); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1364 n.27 (11th Cir. 1997); *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975). Thus, Mr. Jackson need only establish that he was injured, and demonstrate the value of those injuries. Mr. Jackson need not prove that defendant CCHPS failed to meet any particular standard of care or that CCHPS is responsible for the damages; the default establishes CCHPS's liability.

### B. Joint and Several Liability of Defendants CCA and CCHPS

Second, District of Columbia law holds that parties to a joint venture that caused tortious injury to a plaintiff are joint tortfeasors. *Faison v. Nationwide Mortgage Corp.*, 839 F.2d 680, 685 (D.C. App. 1987) (citing *Stevens v. Hall*, 391 A.2d 792, 794 (D.C. 1978)). CCHPS and CCA were jointly engaged in the overall care of Mr. Jackson for the duration of his incarceration at CTF. Deficiencies in the care provided to Mr. Jackson, including general and medical care, caused Mr. Jackson needless suffering and injury.

As joint tortfeasors, CCHPS and CCA are jointly and severally liable to Mr. Jackson for any and all compensatory damages he suffered at their collective hands. *Id.* at 685 (citing *Hill v. McDonald*, 442 A.2d 133, 137 (D.C. 1982)). Although Mr. Jackson's treatment was serially deficient, and even if responsibility for some deficiencies may be attributable solely to CCA's conduct, CCHPS shares joint responsibility for injuries arising out of the inadequate care provided to Mr. Jackson. In particular, Mr. Jackson's

claims that he was denied a top bunk in contravention of doctor's orders, denied certain prescribed medications for stomach and other ailments, and denied a second mattress prescribed by a neurologist, all fall within the auspices of inadequate medical care to a prisoner.

Defendant CCHPS is not able to avoid liability for its share of Mr. Jackson's damages by virtue of its failure to appear. Because CCHPS is liable for all damages pled in the Amended Complaint, regardless of which named defendant has direct causal responsibility for those injuries, CCHPS is liable for the full amount of damages suffered by Mr. Jackson.

### C.  Prisoner *Pro Se* Complaints Must Be Construed Liberally.

Third, denying Mr. Jackson the full value of his damages in this case would be inconsistent with the established standards for review and consideration of notice pleadings filed by *pro se* litigants, "particularly, prisoner *pro se* complaints." *See, e.g., Johnson-El v. District of Columbia*, 579 A.2d 163, 166 (D.C. 1990) (citing *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)). The Supreme Court has long held that "prisoner *pro se* complaints must be construed liberally in favor of the plaintiff," and this reasoning has been consistently followed by the courts of the District of Columbia. *Id.* The Court declared that "the allegations of such a complaint, however inartfully pleaded are held to less

stringent standards than formal pleadings drafted by lawyers." *Hughes*, 449 U.S. at 9-10.

The transcript of Mr. Jackson's damages hearing casts doubt as to whether Mr. Jackson's handwritten *pro se* prisoner's Complaint has been properly construed liberally in his favor, and raises the concern that rather than being held to less stringent standards than formal pleadings prepared by counsel, have actually been held to more strict standards to his detriment (Tr. 15:16-23). This would be error. The law requires that the Court grant Mr. Jackson, a *pro se* prisoner litigant at the time he filed his Amended Complaint, broad leeway in his initial pleading.

The Court should also note that in cases involving *pro se* prisoner plaintiffs, courts consider additional pleadings and filings in conjunction with the complaint to determine the full scope of his case. *See, e.g., Johnson-El*, 579 A.2d at 168 (considering, in evaluating the sufficiency of a *pro se* prisoner's complaint, not only the plaintiff's Complaint, but also his pre-trial statements, his Request for Stipulation, and caselaw cited in his pleadings). Mr. Jackson did not have the opportunity to supplement his initial pleadings because CCHPS did not answer the Complaint or even enter an appearance in the case. CCHPS's failure to appear in this case should not result in Mr. Jackson being held to a *higher* standard than other *pro se* prisoner plaintiffs.

    **D.    Equity Requires That Mr. Jackson Recover his Full Damages from CCHPS.**

Finally, for policy and equity reasons, it would be inappropriate to allow a defendant in a civil suit to avoid its full measure of damages by simply refusing to enter an appearance in a case, which would be the result here. CCHPS should have to appear and answer for its conduct to avoid full accountability for the damages its deficient treatment caused. A contrary policy where the Court afforded special protection to defendants that elected not to engage in the adjudicatory process would create perverse incentives for defendants.

Accordingly, Mr. Jackson's damages award should not be limited as proposed by the Court during Mr. Jackson's damages hearing. Rather, Mr. Jackson should be awarded his full measure of damages as construed liberally from the Amended Complaint. Should the Court desire to review supplemental evidence of the additional categories of damages suffered by Mr. Jackson, he is available to return for an additional damages hearing. However, we believe that the nature of the harm and the value of damages pled in Mr. Jackson's Amended Complaint serve as a sufficient guide for a damages award, if the Court does not feel a supplemental hearing is necessary.

**III.    Mr. Jackson Established his Medical Negligence and Eighth Amendment Claims.**

Notwithstanding the above, and without waiving the position that proof of liability is not properly before the Court, we nevertheless present, as requested at the

January 4, 2008 hearing, the evidence that establishes Mr. Jackson's claims for Medical Negligence (or Medical Malpractice) and his Eighth Amendment claim.

### A. Medical Negligence (Medical Malpractice).

Medical negligence and medical malpractice are used synonymously by the District of Columbia courts. *See, e.g., Hill v. Medlantic Health Care Group*, 933 A.2d 314, 319 (D.C. 2007) (referring to the case interchangeably throughout the opinion as "a medical malpractice case" and "a medical negligence case"). In a case similar to Mr. Jackson's, *D.C. v. Watkins*, 684 A.2d 395, 401 (D.C. 1996), which also involved a claim of medical negligence regarding the failure to provide certain medication to a D.C. prisoner, the District of Columbia Court of Appeals set forth that the plaintiff must prove: "[1] the applicable standard of care, [2] a deviation from that standard by the defendant, and [3] a causal relationship between the deviation and the plaintiff's injury." *Id.* at 401 (quoting *Toy v. D.C.*, 549 A.2d 1, 6 (D.C. 1988)). The District of Columbia Court of Appeals has further explained that "[e]xpert testimony is usually required to establish each of [these] elements, except where proof is so obvious as to lie within the ken of the average lay juror." *Derzavis v. Bepko*, 766 A.2d 514, (D.C. App. 2000) (quoting *Washington v. Washington Hospital Center*, 579 A.2d 177, 181 (D.C. 1990)). This is such a case.

While in custody at CCA, CCHPS was responsible for Mr. Jackson's medical care. When he was first incarcerated, CCHPS's medical staff diagnosed a host of medical problems, and prescribed him several medications, including medications for blood pressure, gastritis, and acid reflux. (Tr. 8:3-6, 26:4-13). Mr. Jackson was temporarily transferred from CCA to another facility, FCI Butner, for a psychological evaluation. When he returned to CCA in January 2006, CCHPS failed to provide Mr. Jackson the very same medications that CCHPS had previously prescribed and provided to Mr. Jackson. Tr. 26:4-13.

Mr. Jackson repeatedly brought this failure to the attention of CCHPS representatives, including by daily complaints to CCHPS's "pill nurse," who distributed the medication to prisoners (Tr. 31:23-32:2), multiple grievances that involved review with CCHPS staff by the grievance investigator (Tr. 16:1-23), as well as visits to CCHPS doctors on at least two occasions (Tr. 21:18-24, 28:12-16). Notwithstanding his numerous complaints about the pain he was suffering, CCHPS continued to deny Mr. Jackson his medications, and failed to even look in his medical records, which were available on CCHPS's computer system and were also obtainable by a simple phone call to FCI Butner, to confirm Mr. Jackson's need for medication. Tr. 23:3-11. For nearly three full weeks, his pain and suffering went ignored. Tr. 9:1-9, 11:18-12:6, 13:13-21, 16:3-5.

After 19 days, one of CCHPS's doctors finally looked in CCHPS's computer system, found Mr. Jackson's medical records, which were there all along, and realized that indeed, Mr. Jackson should have been receiving medications for stomach ailments, blood pressure, acid reflux, and other conditions the entire time. Tr. 32:15-16. Notwithstanding the fact that those records were in CCHPS's computer files all along, Mr. Jackson was able to obtain additional proof of his prescriptions by making a simple phone call to FCI Butner. CCHPS could have and should have made this same effort. Failing to do so caused Mr. Jackson to suffer serious pain, burning in his stomach and throat, and a sustained inability to eat or sleep. Tr. 37:2-7, 37:11-13, 38:3-12.

The *Watkins* case, discussed above, addressed this same scenario. A prisoner who was taking medications prescribed by prison medical staff was transferred from one facility to another. *Watkins*, 684 A.2d at 397. At the new facility, he sought to have his prescription refilled, but the new facility denied him the medication, and the prisoner suffered injury as a result. *Id.* at 397-98. The District of Columbia Court of Appeals in that case upheld a jury's finding of medical negligence. *Id.* at 402. Mr. Jackson's case involves even more disturbing facts. Particularly, it was CCHPS itself that originally prescribed Mr. Jackson's medications, and it would have been so simple for CCHPS to verify that Mr. Jackson needed certain medications. Accordingly, Mr. Jackson has pled and testified to sufficient facts to support a finding of medical negligence.

B.    **Eighth Amendment Claim**

Mr. Jackson identified a separate basis for his claim of an "8th Amendment violation of cruel and unusual punishment." *Amended Complaint* at 2. The Eighth Amendment to the United States Constitution proscribes the infliction of "cruel and unusual punishments." As the Supreme Court explained in *Helling v. McKinney*, 509 U.S. 25 (1993), it "is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* at 31. The Court reiterated:

> When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being[, it must] provide for his basic human needs -- e. g., food, clothing, shelter, medical care, and reasonable safety -- [or else] it transgresses the substantive limits on state action set by the Eighth Amendment.

*Id.* at 32 (quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199-200 (1989)).

Supreme Court precedent, as explained by the D.C. Circuit in <u>Brown v. District of Columbia</u>, 514 F.3d 1279, *9 (D.C. Cir. 2008), requires that:

> When a prisoner claims that his custodian has violated the Eighth Amendment by failing to provide adequate medical care, he must allege acts or omissions sufficiently harmful to evidence deliberate indifference

>to serious medical needs. One example of such deliberate indifference is a prison doctor or official who intentionally den[ies] or delay[s] access to medical care or intentionally interfere[s] with the treatment once prescribed.

(citations omitted). The predicate level of deliberate indifference has been defined to "entail[] something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Mr. Jackson's damages, which are taken as true in the context of a default judgment, fall within the ambit of protection afforded by the Eighth Amendment. Mr. Jackson "informed staff officers and administrative staff members of [a doctor's order that he be placed on a bottom bunk,] and [he] was ignored." *Amended Complaint* at 1. The doctor's order was not provided merely for convenience or as a favor to Mr. Jackson. Rather, Mr. Jackson had been diagnosed "with restless leg syndrome, abnormalities of the nerves in both legs, [and] arthritis of the spine and knees." *Id.* Despite the availability of lower bunks, Mr. Jackson remained assigned to a top bunk for "30 days total and suffered pain in [his] legs, lower back, knees and hips." *Id.* The repeated refusal to undertake a simple measure prescribed by a doctor to relieve suffering from multiple ailments smacks of deliberate indifference. Such indifference is tantamount to cruel and unusual punishment and should not be tolerated.

Mr. Jackson's caretakers also demonstrated deliberate indifference to his medically diagnosed stomach problems. Mr. Jackson's Amended Complaint states that on "January 19, 2006, [he] informed medical staff of stomach medication for gastritis and [acid] reflux. Medical staff was aware of this problem and refused to prescribe necessary medication that [he] had been taking since [arrival]." *Amended Complaint* at 1-2; *see also* Tr. 10:1-8. The indifference persisted, causing Mr. Jackson to "suffer[] abdominal pain for nineteen days." *Amended Complaint* at 2; *see also* Tr. 37:2-7. Conscious withholding of basic medical treatment that causes an inmate to suffer aligns with the example of deliberate indifference found in *Brown v. District of Columbia* – "a prison doctor or official who intentionally den[ies] or delay[s] access to medical care." 514 F.3d at *9. This is all the more true given Mr. Jackson's testimony that other medications were also withheld for some period of time, including those for blood pressure, ulcers and a bladder problem. Tr. 8:3-16.

Mr. Jackson's injury was not rectified by the eventual provision of his medications, nor can it now be deemed mere negligence. The prison doctors had a duty to provide medications to alleviate Mr. Jackson's condition, and they ignored that duty. All the while, CCHPS possessed multiple means of confirming his condition, including among them: (1) listening to and reading Mr. Jackson's numerous verbal and written statements to CCHPS representatives; (2) reviewing Mr. Jackson's medical records, which were available on CCHPS's computer system and obtainable by a phone call to

FCI Butner; (3) recalling CCHPS's own prior course of treatment to Mr. Jackson; and (4) the continuous opportunity to re-examine Mr. Jackson's health in person.

CCHPS's abject refusal to provide medical care for an inmate suffering from ailments that CCHPS itself diagnosed constitutes deliberate indifference and violates the Eighth Amendment's prohibition against cruel and unusual punishment.  As such, Mr. Jackson deserves to be compensated for his wrongful suffering.

## IV.   Conclusion / Relief Sought

For the foregoing reasons, Mr. Jackson begs the Court for a judgment enforceable against CCHPS for the enumerated damages specified in his Amended Complaint.  In particular, for each of the thirty (30) days he was forced to sleep on the bottom bunk in violation of express orders from his doctor, Mr. Jackson seeks $1,000.00 ($30,000.00 total).  Likewise, for each of the nineteen (19) days he was forced to suffer without medical care for his gastritis and acid reflux disease, Mr. Jackson seeks $500.00 ($9,500.00 total).  Finally, for each of the eight (8) days he was forced to sleep on a single mattress in violation of orders from the neurologist, Mr. Jackson seeks $150.00 ($1,200.00 total).  In addition, Mr. Jackson requests that the Court provide any relief it deems appropriate for these instances of Medical Negligence and resultant violations of the Eighth Amendment.

| | |
|---|---|
| March 28, 2008 | Respectfully submitted,<br><br>/s/ Michael S. Nadel<br>_____<br>Michael S. Nadel<br>Eric J. Conn<br>Andrew J. Genz<br>McDermott Will & Emery LLP<br>600 Thirteenth St. N.W.<br>Washington, D.C. 20005<br>202-756-8000<br><br>*Attorneys for Plaintiff Raymond Jackson* |