**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RAYMOND G. JACKSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CORRECTIONAL CORPORATION OF AMERICA, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 06-1241 (CKK) (JMF)** |

**MEMORANDUM OPINION**

The plaintiff filed a motion for default judgment against the Center for Correctional Health Policy and Studies, Inc. ("CCHPS"). After hearing evidence relating to liability and damages, the Court requested supplemental briefing. Now, upon consideration of the entire record in this case, the Court concludes that the defaulting defendant is liable to the plaintiff for compensatory damages for medical negligence, and that all other relief requested must be denied.

Background

The plaintiff, acting *pro se*,[1] filed an amended complaint asserting claims against the Correctional Corporation of America ("CCA") and CCHPS for medical negligence and violations of his Eighth Amendment guarantee against cruel and unusual punishment, and seeking compensatory and punitive damages. CCA was dismissed from this action because the

---

[1] Plaintiff is now represented by counsel who first entered an appearance limited to the purpose of mediation (*see* Notice of Appearance, Apr. 9, 2007) and later entered his appearance without limitation on January 3, 2008 (*see* Notice of Appearance, Jan. 3, 2008), but did not undertake to further amend the complaint.

plaintiff failed to state any claims against it. *See Jackson v. Corrections Corp. of America,* Civil Action 06-1241, 2007 WL 1848014 (D.D.C. June 27, 2007).

The complaint alleges, among other things, that while plaintiff was incarcerated in the District of Columbia's Correctional Treatment Facility ("CTF") he was for 19 consecutive days in January and February 2006 deprived of medications prescribed for his stomach ailments. (Am. Compl. at 2.) The amended complaint identified CCHPS as one of the defendants, but did not include any allegations that explicitly referred to conduct by CCHPS and did not allege the relationship between CCHPS and the plaintiff or the other defendants. The complaint did allege that plaintiff had informed "medical staff" of his need for stomach medications (*id.* at 1), that "medical staff was aware of this problem and refused to prescribe necessary medication" (*id.* at 2), and that plaintiff "suffered abdominal pain for 19 days [until] medical staff was provided with a medical summary advising them to follow up on stomach pain . . . ." (*id.*).

CCHPS did not respond to the summons and complaint or otherwise enter an appearance, and on August 23, 2007, the Court directed the Clerk to enter default as to CCHPS and the plaintiff to file a motion for judgment. The Court subsequently denied without prejudice the motion for judgment, and scheduled an evidentiary hearing on the issue of liability and damages. At the evidentiary hearing, the Court questioned whether CCHPS had sufficient notice of plaintiff's claims based on the allegations in the amended complaint. (Tr. of Evidentiary Hr'g, Jan. 4, 2008, at 40.)

Testimony at the hearing established that the plaintiff did not know with certainty who employed the medication nurse to whom he allegedly complained regularly during the 19 days he was without his prescription medication, but that the nurse was uniformed in the same manner as

the medical staff in the part of the CTF that was run by CCHPS. (*Id.* at 25, 39.) Through testimony, the plaintiff established that he repeatedly requested the medicine he had been prescribed, attended sick call for the same reason (*id.* at 8-9) and even filed a grievance (*id.* at 16), all to no immediate avail. He established that a few months earlier he had been housed at the same facility and had been given the prescription medication he was requesting (*id.* at 10), and that in response to his requests the medical staff dispensed blood pressure medication that had also been previously prescribed for him, but not the stomach medication (*id.* at 13). The plaintiff testified that without the medication he experienced pain in the form of a burning sensation in his stomach and esophagus, and that the pain increased over the 19 days that he was denied his prescribed medications. (*Id.* at 37.) At times the pain caused him to be unable to eat or sleep. (*Id.*)

## Discussion

### A. Notice

Complaints filed by *pro se* litigants are held to less stringent standards than formal pleadings drafted by lawyers and are to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even *pro se* litigants, however, must comply with the Federal Rules of Civil Procedure. *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). A complaint is required to contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). One "purpose of the rule is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977).

Here, then, the first question is whether the plaintiff's *pro se* amended complaint was sufficient to put CCHPS on notice that plaintiff was asserting claims against it. The complaint does not explicitly link CCHPS with any alleged wrongful conduct. Instead, the complaint expressly links alleged wrongful conduct that occurred in January and February 2006 with the medical staff. The complaint does not explicitly allege that CCHPS was the employer of the medical staff or that it was responsible for medical care at the CTF in January and February 2006. However, the Court takes judicial notice that at least as late as September 23, 2005, CCHPS was "'the medical contractor that provides medical and mental healthcare for the inmates at DC Detention Facility'" and has no "'duty or responsibility for the institutional care for the prisoners, as its duties are related to the medical and mental healthcare for the inmates.'" *Turner-Bey v. Director of Med. Svcs. (CCHP),* Civil Action No. 04-1744 (RCL), 2005 WL 3544290, *1 (D.D.C. Dec. 27, 2005) (quoting CCHPS's Response to the court's Show Cause Order.) The Court takes further judicial notice that effective October 2006, Unity Healthcare, Inc. assumed the contract for providing health care to the inmates at the CTF. *See* Joint Hearing on the Performance of Unity Healthcare before the Committee on Health and the Committee on Public Safety and the Judiciary, Council of the District of Columbia, Testimony of Devon Brown at 3, July 12, 2007.[2] The Court concludes that the allegations in this *pro se* complaint that medical staff in the CTF neglected plaintiff's medical needs on specific dates was sufficient to put CCHPS on notice of the claims against it stemming from the deprivation in January and February 2006 of the prescription medication for plaintiff's stomach ailments. By the same

[2] Available for public viewing at: http://newsroom.dc.gov/file.aspx/release/11615/JointHearingonThePerformanceofUnityHealthcareJuly122007.pdf

token, CCHPS was not on notice as to any other claims asserted in the amended complaint, because the other claims did not stem from conduct attributed to the medical staff.

B. Default Liability

"The law is clear . . . [that a defendant's] failure to appear and the Clerk's subsequent entry of default against it do not automatically entitle plaintiff to a default judgment. Indeed, a default is not an absolute confession by the defendant of his liability and of the plaintiff's right to recover, but is instead merely an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Natures Way Marine, LLC v. North America Materials, Inc.*, Civil Action No. 08-0005-WS-B, 2008 WL 801702, *2 (S.D. Ala. Mar. 24, 2008) (internal quotation marks and citations omitted). First, "the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Descent v. Kolitsidas,* 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005); *see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Associates, Ltd.,* 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (stating that a default judgment is appropriate only if the court finds sufficient basis in pleadings for judgment to be entered, and that the complaint states a claim). In other words, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F .3d 1353, 1370 n. 41 (11th Cir.1997). Second, a default judgment does not give the plaintiff "a blank check to recover from [the defaulting defendant] any losses it had ever suffered from whatever source." *TWA v Hughes*, 449 F.2d 51, 70 (2d Cir. 1971), *rev'd on other grounds sub nom Hughes Tool Co. v. TWA*, 409 U.S. 363 (1973). Rather, "[t]he outer bounds of recovery allowable are . . . measured by the principle of proximate cause." *Id.*

Because of its default, CCHPS is deemed to have admitted the well-pleaded factual allegations in the complaint. *Natures Way,* 2008 WL 801702 at 2. Specifically, by its silence CCHPS has admitted that for 19 days in a row its medical staff did not respond to plaintiff's requests for his prescription stomach medication, and that he suffered abdominal pain as a result. The next question is whether these well-pleaded allegations state a claim upon which relief may be granted against CCHPS for either a violation of the plaintiff's Eighth Amendment guarantee against cruel and unusual punishment or for common law medical negligence.

1. The Eighth Amendment claim

The Court concludes that the plaintiff has not stated an Eighth Amendment claim against CCHPS, and that this constitutional claim fails for the same reasons his Eighth Amendment claim against CCA was dismissed earlier in this case. *Jackson,* 2007 WL 1848014, *7. CCHPS was providing medical services in a correctional facility that the District of Columbia ordinarily would provide and therefore CCHPS stands in the shoes of the municipality and is subject to the same liability. *See Brown v. Dist. of Columbia,* Civil Action No. 04-2195, 2005 WL 3276267, at *3 (D.D.C. Aug. 2, 2005) (concluding that private corporation operating prison under contract with District of Columbia government is "state actor" for purposes of § 1983); *Gabriel v. Corrections Corp. of America,* 211 F. Supp. 2d 132, 138 (D.D.C. 2002) (same). However, CCHPS cannot be held liable for a constitutional violation unless the constitutional violation is the result of a CCHPS policy or custom. *Monell v. Dep't of Social Svcs.,* 436 U.S. 658, 690 (1978); *Gabriel,* 211 F. Supp. 2d at 138. Plaintiff's amended complaint does not allege that the medical negligence was a CCHPS policy or custom, and therefore fails to state a valid Eighth Amendment claim against CCHPS. *See Carter v. Dist. of Columbia,* 795 F.2d 116, 122 (D.C.

Cir. 1986) (plaintiff must show a course deliberately pursued establishing affirmative link between policy and alleged constitutional violation).

The constitutional claim founders on another ground, as well. "To establish that a defendant's failure to provide proper medical attention violates the Eighth Amendment, a plaintiff must establish that the defendant has exhibited 'deliberate indifference to [the] serious needs of prisoners.'" *Gabriel,* 211 F. Supp. at 138 (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kansas Dep't of Corr.,* 165 F.3d 803, 811 (10th Cir. 1999). To show a constitutional violation, the plaintiff must show that the defendant knew of and disregarded an "excessive risk" to the inmate's health or safety and must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The complaint does not allege (and the record facts do not establish) that the deprivation of prescription medication for plaintiff's stomach ailment posed an excessive risk, or that either the unnamed medical staff or the defendant CCHPS knew facts that would support an inference of excessive risk or made an inference of excessive risk. For these reasons, the plaintiff cannot recover on his Eighth Amendment claim against CCHPS.

2. The medical negligence claim

To state a common law claim for medical negligence, the plaintiff must establish a duty and standard of care and a deviation from the standard of care that caused his injuries. *Cleary v. Group Health Ass'n,* 691 A.2d 148, 153 (D.C. 1997) (stating the elements of the claim and acknowledging that there are cases where expert opinion on these issues is not required, but that

"laymen can say, as a matter of common knowledge and observation, that the type of harm would not ordinarily occur in the absence of negligence") (internal quotations and citation omitted). The complaint alleges facts sufficient to support an inference establishing each of these elements: the medical staff at the institution owed a duty of care to the plaintiff, that for 19 days CCHPS' medical staff did not respond to the plaintiff's complaints about his stomach pain and his requests for his prescription stomach medication, and he suffered 19 days of abdominal pain as a result. The Court concludes, as a matter of common knowledge and observation, that the type of harm the plaintiff suffered would not ordinarily occur in the absence of negligence. *Cleary*, 691 A.2d at 153. Accordingly, the Court finds that the complaint states a valid claim for medical negligence against the defaulting CCHPS.

The Court also concludes that the record evidence supports a finding of liability for damages against CCHPS for medical negligence under a theory of *respondeat superior.* "Under the doctrine of *respondeat superior*, an employer may be held liable for the acts of his employees committed within the scope of their employment." *Brown v. Argenbright Security, Inc.*, 782 A.2d 752, 757 (D.C. 2001) (internal quotation marks and citation omitted); *see also District of Columbia v. Evans*, 644 A.2d 1008, 1023 (D.C. 1994) (stating that "[i]f the plaintiff prevails against the [District's] police officers on a negligence theory, the District may also be subject to liability for negligence under the doctrine of *respondeat superior*"). Because the plaintiff has linked only the denial of his prescription stomach medications with the defaulting defendant, his damages claim is limited accordingly by the principles of proximate cause. *TWA v Hughes*, 449 F.2d at 70. For his injuries stemming from the neglect, which involved a burning pain in his stomach and esophagus that increased over time without his medication and at times prevented

him from sleeping or eating, Plaintiff seeks compensatory damages in the amount of $500 per day for the 19 days he was deprived of his medication.

Plaintiff has prayed generally for punitive damages. The District of Columbia law does not allow punitive damages for negligence claims. *Oliver v. Mustafa,* 929 A.2d 873, 878 (D.C. 2007) (noting that punitive damages are allowed only for intentional torts and only if plaintiff shows by clear and convincing evidence that the tort was aggravated by egregious conduct and a state of mind that justifies punitive damages). Accordingly, to the extent that the plaintiff prayed for punitive damages in conjunction with his claim for medical negligence, that relief must be denied.

Conclusion

For the reasons stated in this memorandum opinion, by an accompanying order the Court will grant judgment for the plaintiff against the defaulting defendant CCHPS on the claim of medical negligence, and award plaintiff compensatory damages in the amount of $9,500.00, and deny all other relief requested.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: July 14, 2008